RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

LAURA CANADAY, Individually and on Behalf of All
Others Similarly Situated,

　　　　　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

THE ANTHEM COMPANIES, INC.,

　　　　　　　　　　　　*Defendant-Appellee*.

┐
│
│
│
├ No. 20-5947
│
│
│
┘

────────────────

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 1:19-cv-01084—S. Thomas Anderson, District Judge.

Argued: June 10, 2021

Decided and Filed: August 17, 2021

Before: SUTTON, Chief Judge; McKEAGUE and DONALD, Circuit Judges.

────────────────

## COUNSEL

**ARGUED:** Adam W. Hansen, APOLLO LAW LLC, Minneapolis, Minnesota, for Appellant.
Brett C. Bartlett, SEYFARTH SHAW LLP, Atlanta, Georgia, for Appellee. **ON BRIEF:** Adam
W. Hansen, Colin R. Reeves, APOLLO LAW LLC, Minneapolis, Minnesota, Rachhana T. Srey,
Caroline E. Bressman, NICHOLS KASTER, PLLP, Minneapolis, Minnesota, William B. Ryan,
DONATI LAW FIRM, PLLC, Memphis, Tennessee, for Appellant. Brett C. Bartlett, Kevin M.
Young, Lennon B. Haas, SEYFARTH SHAW LLP, Atlanta, Georgia, James M. Harris,
SEYFARTH SHAW LLP, Los Angeles, California, for Appellee. Scott L. Nelson, PUBLIC
CITIZEN LITIGATION GROUP, Washington, D.C., Nicole A. Saharsky, MAYER BROWN
LLP, Washington, D.C., for Amici Curiae.

　　　　SUTTON, C.J., delivered the opinion of the court in which McKEAGUE, J., joined.
DONALD, J. (pp. 16–32), delivered a separate dissenting opinion.

---

**OPINION**

---

SUTTON, Chief Judge. Anthem provides health insurance. To ensure that it pays only for medically necessary procedures, it hires nurses to review insurance claims. The company pays those nurses a salary but does not pay them overtime. Laura Canaday, an Anthem nurse who lives in Tennessee, filed a proposed collective action under the Fair Labor Standards Act in federal court in Tennessee, claiming that the company misclassified her and others as exempt from the Act's overtime pay provisions. A number of Anthem nurses in other States opted into the collective action. But the district court dismissed the out-of-state plaintiffs on personal jurisdiction grounds. We affirm.

I.

A.

Enacted in 1938, the Fair Labor Standards Act creates a federal minimum wage, child labor protections, and overtime compensation requirements. 29 U.S.C. §§ 206, 207, 212. The overtime provisions require an employer to pay employees at least 150% of their hourly pay rate when they work more than 40 hours in a week. *Id.* § 207(a)(1). The Act provides two key enforcement mechanisms. It authorizes the Secretary of Labor to initiate an FLSA action on behalf of employees "in any court of competent jurisdiction." *Id.* § 216(c). And it authorizes employees to sue "in any Federal or State court of competent jurisdiction" on "behalf of . . . themselves and other employees similarly situated." *Id.* § 216(b).

Under the second option, the one in play here, "similarly situated" employees may join a collective action by filing a "consent in writing," after which they become "party plaintiff[s]." *Id.* Once they file a written consent, opt-in plaintiffs enjoy party status as if they had initiated the action. The Act says that each similarly situated employee who opts in amounts to an "individual claimant," whose lawsuit counts as "commenced" on the day the employee files her written consent to join the collective action. *See id.* § 256.

B.

From its headquarters in Indiana, Anthem offers a host of health-related insurance policies. To ensure that the insurance company pays only covered claims, Anthem subsidiaries pay nurses to conduct what have come to be called "utilization reviews." In conducting these reviews, nurses assess the necessity of medical procedures under each health plan. Anthem treats these nurses as exempt from the FLSA's overtime provisions.

Since 2017, Laura Canaday has worked for Anthem as a review nurse in Tennessee. Two years into her tenure, Canaday filed this proposed collective action in federal court in Tennessee, alleging that the company misclassified her and other review nurses as exempt from the federal overtime rules. Dozens of nurses opted into the action by filing written consent forms with the federal court. Some worked for Anthem in Tennessee. Others worked for the company in other States across the country.

Canaday moved to certify a collective action of all utilization review nurses that Anthem classified as exempt from overtime. Anthem moved to dismiss all out-of-state nurses for lack of personal jurisdiction. The district court dismissed the nonresident plaintiffs without prejudice, leaving a collective action of Tennessee-based nurses.

Canaday sought to certify this order for interlocutory appeal. *See* 28 U.S.C. § 1292(b). The district court granted Canaday her request, and so did we.

II.

Federal law empowers and constrains federal courts in two salient ways. One turns on subject matter jurisdiction, the types of cases federal courts may hear, whether by granting them power to resolve only "Cases" or "Controversies," U.S. Const. art. III, § 2, or enabling them to hear matters of federal law, 28 U.S.C. § 1331, or enabling them to hear matters of state law under certain circumstances, *id.* §§ 1332, 1367. The other turns on personal jurisdiction, the types of litigants the federal courts may bind with their judgments, whether they be plaintiffs or defendants.

This case concerns the second source of power and its constraints. How does a federal court obtain personal jurisdiction over a defendant in a civil lawsuit? At English common law, a writ of *capias ad respondendum* directed the sheriff to take the defendant into custody to secure his appearance before the court. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Service of process took the old writ's place in the mid-eighteenth century, making a summons rather than an arrest the tool lawyers used to commence a civil lawsuit. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Over time, service of process became a prerequisite for obtaining authority over a defendant, making it appropriate to say that "service of process conferred jurisdiction." *Burnham v. Superior Ct.*, 495 U.S. 604, 613 (1990); *see also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Robertson v. R.R. Lab. Bd.*, 268 U.S. 619, 622–23 (1925); *Boswell's Lessee v. Otis*, 50 U.S. (9 How.) 336, 348 (1850).

Today, a fork appears in the road over how Congress authorizes service of process on defendants and how it empowers federal courts to obtain personal jurisdiction over them. One path is for Congress to include a nationwide service of process provision in the regulatory statute itself, one that could permit claimants to sue a defendant in any of the 94 federal district courts in the country. Several statutes take this route. A few prominent examples include The Sherman Act, 15 U.S.C. § 5, The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1965(d), and The False Claims Act, 31 U.S.C. § 3732(a). But that is the less frequently exercised option, and the FLSA does not use it. More often, plaintiffs must look for guidance in the Federal Rules of Civil Procedure, one of five sets of "general rules of practice and procedure" that the Rules Enabling Act authorizes the federal courts to create and that Congress may veto or override with rules of its own. 28 U.S.C. § 2072 (also permitting rules of appellate, bankruptcy, and criminal procedure, and rules of evidence).

Rule 4(k) of the Federal Rules of Civil Procedure, adopted in 1993 and entitled "Territorial Limits of Effective Service," contains the pertinent provision. It says:

> Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located; (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or (C) when authorized by a federal statute.

Two of the options do not apply. Canaday did not join Anthem under Civil Rules 14 or 19. And the FLSA does not contain a nationwide service provision. That leaves the question whether Anthem is subject to jurisdiction in the host State. Tennessee's long-arm statute authorizes its courts to exercise personal jurisdiction "[o]n any basis not inconsistent with the constitution of . . . the United States." Tenn. Code Ann. § 20-2-225.

The Due Process Clause of the Fourteenth Amendment sets the key limit, constraining a state court's "power to exercise jurisdiction" over an out-of-state defendant. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). Before 1945, that power was limited to the territory of the State. But that year, the Supreme Court extended the authority to exercise power over an out-of-state defendant so long as the defendant had such "contacts" with the forum State that "the maintenance of the suit" is "reasonable" and "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316–317 (quotation omitted). Whether a court has personal jurisdiction over a defendant depends on the defendant's contacts with the State in which the plaintiff filed the lawsuit.

Two types of personal jurisdiction exist for corporations. A court may assert "general," or "all-purpose," jurisdiction over a defendant in its home State, where the defendant is incorporated or headquartered. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Or a court may exercise "specific," or case-based, jurisdiction over a defendant if the plaintiff's claims "arise[] out of or relate[] to" the defendant's forum State activities. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation omitted).

Anthem is based in Indiana, not Tennessee. General jurisdiction is not an option. That leaves specific jurisdiction. "What is needed . . . is a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1781 (2017). Is there a claim-specific and Anthem-specific relationship between the out-of-state claims and Tennessee?

*Bristol-Myers* goes a long way to showing why there is not. The case involved a "mass action" under state law against the pharmaceutical company Bristol-Myers Squibb for alleged defects in Plavix, a blood thinner drug. *Id.* at 1777–78. Residents and nonresidents of California

sued the company in California state court, alleging injuries from ingesting Plavix. *Id.* at 1778. The nonresident plaintiffs did not claim any relationship with the forum State. *Id.* They did not purchase Plavix in California or suffer any harm from Plavix in California. *Id.* at 1781. The U.S. Supreme Court reasoned that any similarity between the resident and nonresident plaintiffs' claims offered an "insufficient basis" for exercising specific jurisdiction. *Id.* (quotation omitted). Unless nonresident plaintiffs could demonstrate that their claims arose out of the defendant's contacts with the forum State, personal jurisdiction over the company did not exist, no matter "the extent of a defendant's unconnected activities in the State." *Id.*

The Court acknowledged that its holding would likely splinter the nonresident plaintiffs' lawsuits into separate actions in their respective States. *Id.* at 1783. To the extent the plaintiffs perceived a statewide mass action as too constraining, the Court noted that the claimants could have brought a mass action against Bristol-Myers Squibb in New York (its headquarters) or in Delaware (its place of incorporation). *Id.* at 1777, 1783. Any other inefficiencies for the plaintiffs ran into the imperative that due process mainly concerns "the burden on the defendant." *Id.* at 1780 (quotation omitted).

The principles animating *Bristol-Myers*'s application to mass actions under California law apply with equal force to FLSA collective actions under federal law. As other circuits have acknowledged, an FLSA "collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of individual plaintiffs with individual cases." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018) (emphasis omitted). "A mass action is more akin to an opt-in [FLSA collective action] than it is to a class action." *Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 272 n.1 (3d Cir. 2013). The key link is party status. In an FLSA collective action, as in the mass action under California law, each opt-in plaintiff becomes a real party in interest, who must meet her burden for obtaining relief and satisfy the other requirements of party status. *See* 29 U.S.C. § 216(b).

Have the nonresident plaintiffs in this case satisfied *Bristol-Myers*'s requirements? Have they brought claims arising out of or relating to Anthem's conduct in Tennessee? We think not. Anthem did not employ the nonresident plaintiffs in Tennessee. Anthem did not pay the nonresident plaintiffs in Tennessee. Nor did Anthem shortchange them overtime compensation

in Tennessee. Taken together, the claims before us look just like the claims in *Bristol-Myers*. Where, as here, nonresident plaintiffs opt into a putative collective action under the FLSA, a court may not exercise specific personal jurisdiction over claims unrelated to the defendant's conduct in the forum State.

Adherence to this approach, by the way, does not seem likely to disrupt the way FLSA collective actions traditionally have been filed, at least as measured by the fact patterns in U.S. Supreme Court decisions. In collective actions filed by individual employees, the named plaintiff traditionally has filed the action in a jurisdiction that possessed general jurisdiction over the defendant or in the jurisdiction from which the allegations arose. Here are the general jurisdiction cases: *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 710 (1986); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 730 (1981); *Iowa Beef Packers, Inc. v. Thompson*, 405 U.S. 228, 228 (1972); *Maneja v. Waialua Agric. Co.*, 349 U.S. 254, 256 (1955); *Thomas v. Hempt Bros.*, 345 U.S. 19, 20 (1953); *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 698 (1947); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 701 (1945). Here are some examples of specific jurisdiction cases: *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2124 (2016); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 447 (2016); *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 29 (2014); *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 222–23 (2014); *Christensen v. Harris Cnty.*, 529 U.S. 576, 580 (2000).

III.

Canaday takes on this conclusion in several ways.

*First*, she contends that the plaintiffs do not have to show that their claims arose out of Anthem's contacts with Tennessee because they filed federal claims in federal court. All they must show, in her view, is that their claims arose out of Anthem's contacts with the United States as a whole, not Tennessee.

In one sense, Canaday is right, at least potentially right. Congress could empower a federal court to exercise personal jurisdiction to the full reach of the federal government's sovereign authority, as opposed to the limits of Tennessee's authority. "Because the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the

courts of the United States but not of any particular State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011); *see* A. Benjamin Spencer, *The Territorial Reach of Federal Courts*, 71 Fla. L. Rev. 979, 979, 991 (2019). *See generally* Stephen E. Sachs, *The Unlimited Jurisdiction of the Federal Courts*, 106 Va. L. Rev. 1703 (2020). Had the National Legislature made that choice, any limitation on its authority would arise from the Fifth Amendment's Due Process Clause and its requirements of minimum contacts with the United States, not the Fourteenth Amendment's Due Process Clause and its requirement of minimum contacts with the host State. *See Bristol-Myers*, 137 S. Ct. at 1784 (reserving the question "whether the Fifth Amendment imposes the same restrictions [as the Fourteenth Amendment] on the exercise of personal jurisdiction by a federal court").

But this is not the choice that the FLSA makes or that Rule 4(k) of the Federal Rules of Civil Procedure makes. Many federal laws provide for nationwide service on defendants and personal jurisdiction over them in any federal district court in the country. *See* 15 U.S.C. § 5 (Sherman Act); 15 U.S.C. § 25 (actions by the United States under the Clayton Act); 15 U.S.C. § 53(a)–(b) (Federal Trade Commission enforcement action); 15 U.S.C. § 78aa(a) (Securities Exchange Act of 1934); 15 U.S.C. § 80a-43 (Investment Company Act of 1940); 18 U.S.C. § 1965(d) (Racketeer Influenced and Corrupt Organizations Act); 29 U.S.C. § 1132(e)(2) (Employee Retirement Income Security Act); 28 U.S.C. § 1391(e) (Mandamus and Venue Act of 1962); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 1655 (actions to assert rights in property when the defendant cannot be served within the State); 28 U.S.C. § 1695 (service of process on a corporation in a shareholder's derivative action); 28 U.S.C. § 2361 (Federal Interpleader Act); 31 U.S.C. § 3732(a) (False Claims Act); 42 U.S.C. § 9613(b), (e) (Comprehensive Environmental Response, Compensation, and Liability Act); 45 U.S.C. § 362(b) (Railroad Unemployment Insurance Act). The FLSA, however, does not offer nationwide service of process.

Civil Rule 4(k) does not fill this gap. It places territorial limits on a defendant's amenability to effective service of a summons by a federal district court, tying personal jurisdiction over a defendant to the host State's jurisdiction over it. *Daimler*, 571 U.S. at 125 (noting that the federal rules ordinarily require federal courts to "follow state law in determining

the bounds of their jurisdiction over persons"). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap.*, 484 U.S. at 104. Any suggestion that Civil Rule 4(k) does not implicate jurisdiction or does not apply to federal claims is belied by the rule's reference to "personal jurisdiction" in Civil Rule 4(k)(1) and its reference to federal claims involving defendants not subject to "any state's courts of general jurisdiction" in Civil Rule 4(k)(2).

It may be true that Congress, whether directly by a statute or indirectly through the rulemaking process, could broaden a federal court's authority to assert personal jurisdiction over defendants throughout the country. And it may be true that the due-process requirements of the Fifth Amendment would permit such service. *See* A. Benjamin Spencer, *Nationwide Personal Jurisdiction for our Federal Courts*, 87 Denv. U. L. Rev. 325, 325, 328 (2010) (noting that Civil Rule 4(k)(1)(A)'s "limitation is a voluntary rather than obligatory restriction, given district courts' status as courts of the national sovereign"); Stephen E. Sachs, *How Congress Should Fix Personal Jurisdiction*, 108 Nw. U. L. Rev. 1301, 1316 (2014) ("Congress could grant nationwide jurisdiction to all federal courts . . . ."). But Civil Rule 4(k) does not permit such authority. Neither does any general federal statute or any specific provision of the FLSA.

While the FLSA shows no reticence in setting nationwide labor standards, it does not establish nationwide service of process. That silence rings loudly when juxtaposed with the many other instances in which Congress included nationwide service of process provisions in laws enacted before and after the FLSA's passage in 1938. What indeed would be the point of these provisions if Civil Rule 4(k) already allowed jurisdiction and service? Because "Congress knows how to authorize nationwide service of process when it wants to provide for it," the absence of express language in the statute "argues forcefully that such authorization was not its intention." *Omni Cap.*, 484 U.S. at 106.

*Second*, Canaday claims that, even if the "named plaintiff"—namely she—must comply with the Fourteenth Amendment, the nonresident plaintiffs need not. Under her view, a collective action may proceed with all similarly situated plaintiffs regardless of where the nonresident plaintiffs' injuries occurred, so long as the named plaintiff complies with Civil Rule 4(k). We disagree.

After Anthem appeared in the case in response to Canaday's service of the complaint, it is true, the nonresident plaintiffs served their "written notices" under Civil Rule 5(a)(l)(E) on Anthem to opt into the collective action, and they had no additional service obligation under Civil Rule 4(k). *See* Fed. R. Civ. P. 5(a)(l)(E) ("Unless these rules provide otherwise, each of the following papers must be served on every party: . . . (E) a written notice, appearance, demand, or offer of judgment, or any similar paper."). But that reality does not eliminate Civil Rule 4(k)'s requirement that the defendant be amenable to the territorial reach of that district court for that claim. The federal court's authority to assert personal jurisdiction over the defendant with respect to the nonresident plaintiffs' claims remains constrained by Civil Rule 4(k)(1)(A)'s territorial limitations. *See Handley v. Ind. & Mich. Elec. Co.*, 732 F.2d 1265, 1269 (6th Cir. 1984); *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007); *see also* A. Benjamin Spencer, *Out of the Quandary: Personal Jurisdiction Over Absent Class Member Claims Explained*, 39 Rev. Litig. 31, 44 (2019) (noting that "the personal jurisdiction limitations of the district court that are imposed by Rule 4(k) remain the operative constraints that district courts apply to . . . new claims by newly joined parties") (quotation and emphasis omitted). Otherwise, Civil Rule 4(k)'s territorial constraints would come to naught. These core limitations on judicial power would be one amended complaint—with potentially new claims and new plaintiffs—away from obsolescence. That is not how it works. Even with amended complaints and opt-in notices, the district court remains constrained by Civil Rule 4(k)'s—and the host State's—personal jurisdictional limitations. *See Tamburo v. Dworkin*, 601 F.3d 693, 700–01 (7th Cir. 2010). Otherwise, *Bristol-Myers* would have permitted California to evade the decision by the mere expedient of adding an out-of-state opt-in provision to its mass action statute.

*Third*, in a variation on that theme, Canaday presses us to analyze personal jurisdiction at the level of the suit rather than at the level of each claim. But the Supreme Court has said otherwise. "What is needed" for a court to exercise specific personal jurisdiction "is a connection between the forum and the *specific claims* at issue." *Bristol-Myers*, 137 S. Ct. at 1781 (emphasis added). Supreme Court caselaw preceding *Bristol-Myers* supports the claim-specific inquiry. *See Int'l Shoe*, 326 U.S. at 317 (noting that a plaintiff may not "su[e] on causes of action unconnected with [a defendant's] activities" in the forum); *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415 n.10 (1984) (noting that specific personal jurisdiction requires a

"relationship between the cause of action and [the defendant's] contacts"); *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 444–45 (1952) (noting that a tribunal may adjudicate only those "cause[s] of action arising out of the corporation's activities within the state of the forum").

*Fourth*, Canaday laments the inefficiencies created by this approach, noting that plaintiffs are challenging a single policy and that this same policy applies in similar fashion to employees across the country. No doubt, Civil Rule 4(k) and an absence of nationwide personal jurisdiction under the FLSA create jetties, cross currents, and other obstacles to prompt relief for the plaintiffs. The short answer is that these limitations are designed principally to protect defendants, not to facilitate plaintiffs' claims. They are designed "to protect the particular interests of the [defendant]" whose rights hang in the balance, no matter the "efficiency" concerns that cut in the other direction. *Fuentes v. Shevin*, 407 U.S. 67, 90 n.22 (1972). Even then, employees may file a nationwide collective action under the FLSA so long as they do so in a forum that may exercise general jurisdiction over the employer—namely its principal place of business or its place of incorporation. It is not obvious, at any rate, that state-based collective actions are necessarily inefficient. Congress apparently did not think so. It gave the federal and state courts authority to hear FLSA claims, noting that collective actions may be filed "in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b). In the face of that choice and in the face of Congress's decision not to add a nationwide service of process provision to the FLSA, it would be odd to attribute to the National Legislature a desire to confine state court FLSA actions to the conventional Fourteenth Amendment rules and sotto voce to permit nationwide service for the same FLSA action in federal court.

*Fifth*, Canaday suggests that pendent personal jurisdiction offers another way to establish jurisdiction over the nonresident plaintiffs' claims and Anthem. But our court has never recognized this exception to these due-process limitations. *Wiggins v. Bank of Am.*, 488 F. Supp. 3d 611, 624 (S.D. Ohio 2020). We see no good reason to do so now.

The idea comes in two forms—pendent claim and pendent party personal jurisdiction. *See* Louis J. Capozzi III, *Relationship Problems: Pendent Personal Jurisdiction After* Bristol-Myers Squibb, 11 Drexel L. Rev. 215, 223–24 (2018). Pendent *claim* personal jurisdiction says that a court's exercise of personal jurisdiction over one defendant as to one claim allows it to

exercise personal jurisdiction with respect to related claims that it could not adjudicate in the anchor claim's absence. *See, e.g.*, *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004); *United States v. Botefuhr*, 309 F.3d 1263, 1272–73 (10th Cir. 2002). But when courts have applied this approach, that was usually because the underlying federal statute, in contrast to the FLSA, authorized nationwide service of process and the plaintiff filed claims related to the federal anchor claim. *See, e.g.*, *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993); *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 123 (3d Cir. 2020); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997); *see also* Linda Sandstrom Simard, *Exploring the Limits of Specific Personal Jurisdiction*, 62 Ohio St. L.J. 1619, 1626 (2001) ("Federal courts are far more willing to adjudicate pendent counts where personal jurisdiction over the anchor count is based upon a federal nationwide service of process provision than where personal jurisdiction over the anchor count is based upon a state long-arm statute.") (quotation omitted). That is not this case.

Pendent *party* personal jurisdiction recognizes that a court's exercise of personal jurisdiction over one defendant as to a particular claim by one plaintiff allows it to exercise personal jurisdiction with respect to similar claims brought by other plaintiffs. But this approach is hard to reconcile with *Bristol-Myers*. That is exactly what California's "mass action" process allowed and precisely what the Supreme Court rejected. *See* Scott Dodson, *Personal Jurisdiction and Aggregation*, 113 Nw. U. L. Rev. 1, 29 (2018). Any relatedness of claims did not suffice in *Bristol-Myers*, as the Court dismissed for lack of jurisdiction the nonresident plaintiffs' claims that could not show a "connection between the forum and the[ir] specific claims at issue." 137 S. Ct. at 1781. If pendent party personal jurisdiction exists, *Bristol-Myers* should have come out the other way.

No less importantly, no federal statute or rule authorizes pendent claim or pendent party personal jurisdiction. *See* 4A Charles A. Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1069.7 (4th ed. 2021) ("Since there is no federal statute on this subject, it seems clear that if it exists, pendent personal jurisdiction must be a creature of federal common law, or 'judge made,' as one court put it."). No such law exists—not in 28 U.S.C. § 1367, the supplemental jurisdiction statute, not in the Federal Rules of Civil Procedure.

*See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) (stressing that a rule allowing a court to exercise "specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause").

*Sixth*, Canaday claims that the same personal jurisdiction rules for class actions apply to FLSA collective actions. Our circuit, it is true, recently held that a district court may exercise personal jurisdiction over a defendant with respect to all of the claims brought by class members because only the named plaintiff in a class action must satisfy personal jurisdiction requirements. *Lyngaas v. Curaden AG*, 992 F.3d 412, 433 (6th Cir. 2021); *see also Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445–48 (7th Cir. 2020). Collective actions and class actions, it is also true, share similarities. They both begin with a single plaintiff's (or a few plaintiffs') lawsuit. They both proceed through a certification process. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017). They both streamline aggregate litigation by permitting large numbers of individuals to litigate similar claims with similar proof. They both in short are mass actions.

But Civil "Rule 23 actions are fundamentally different from collective actions under the FLSA," *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013), and those differences require different approaches to personal jurisdiction. A Rule 23 class action is representative, while a collective action under the FLSA is not. From 1938 until 1947, the FLSA "gave employees and their 'representatives' the right to bring actions to recover amounts due under the FLSA. No written consent requirement of joinder was specified by the statute." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). In response to excessive representative litigation, Congress added the opt-in provision to the FLSA in 1947. *Id.*; *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 255 (3d Cir. 2012) (noting that the amendment "banned what it termed 'representative actions'"); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir. 2020) ("Congress amended § 216(b) in 1947 expressly to put an end to representational litigation in the context of actions proceeding under § 216(b)."). The amendment served the "purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Hoffmann-La Roche*, 493 U.S. at 173. A collective action brought under it "cannot be deemed a representative action on behalf of the

individual employees of the type governed by a Rule 23 action." *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981).

That means all plaintiffs in an FLSA collective action must affirmatively choose to "become parties" by opting into the collective action. *Genesis Healthcare*, 569 U.S. at 75; *accord Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1047 n.1 (7th Cir. 2020). Once they opt in, these plaintiffs become "party plaintiff[s]," 29 U.S.C. § 216(b), enjoying "the same status in relation to the claims of the lawsuit as do the named plaintiffs," *Pricket v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003). That is a distant cry from how a Rule 23 class action works.

Class actions also include procedural protections that collective actions do not. Rule 23 requires plaintiffs to establish numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Plaintiffs in an FLSA collective action need only show that their employment makes them similarly situated to one another. *See* 29 U.S.C. § 216(b); *see also O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 433 (5th Cir. 2021).

Statutes of limitations also operate differently in the two settings, confirming that the two actions represent distinctions in kind, not degree. In the class-action context, filing the named party's claim stops the clock for all members of a putative class action. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983). That is not true for FLSA actions after the 1947 amendment, confirming yet again their individual nature. *See* 29 U.S.C. §§ 255(a), 256; 61 Stat. 88. To like effect, Rule 23 classes must be represented by "class counsel," Fed. R. Civ. P. 23(g), while opt-in plaintiffs in an FLSA collective action have "the right to select counsel of [their] own choosing," *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1073 (S.D. Ohio 2016). With this option of separate counsel, collective actions permit individualized claims and individualized defenses, "in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases." *Campbell*, 903 F.3d at 1105. Class actions, on the other hand, present "a

unitary, coherent claim" that moves through litigation at the named plaintiff's direction and pace. *Lyngaas*, 992 F.3d at 435 (quotation omitted).

All of this explains why a final judgment in the class action context binds all nonparticipating parties unless they have opted out. *See* Fed. R. Civ. P. 23(c)(2). Class litigation thus marks "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). A final judgment in the FLSA collective action context, by contrast, binds only those parties who have opted in. *See Swales*, 985 F.3d at 435.

All in all, the representative nature of class actions may create an exception to the general rules of personal jurisdiction recognized in *Bristol-Myers* for "mass actions" and applicable to collective actions under the FLSA. But that exception does not apply here.

*Seventh*, Canaday worries that, by applying *Bristol-Myers* to this FLSA collective action, we will create obstacles to some types of multidistrict litigation. And those obstacles, she urges, may be more imposing than they are for FLSA actions. Most FLSA actions involve one defendant, allowing the plaintiff to use general personal jurisdiction to file a nationwide action in the State in which the company is incorporated or does most of its business. Some multidistrict litigation, however, involves several defendants, making it less likely that one State will have general jurisdiction for all of them. That is a fair point. But the answer is that our decision today by no means resolves the application of *Bristol-Myers* to multidistrict litigation. Multidistrict litigation implicates a different statute, *see* 28 U.S.C. § 1407(a), a different history, *see* Andrew D. Bradt, *The Looming Battle for Control of Multidistrict Litigation in Historical Perspective*, 87 Fordham L. Rev. 87 (2018), and a different body of caselaw, *see In re FMC Corp. Pat. Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976); *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1380 (J.P.M.L. 2020); *Howard v. Sulzer Orthopedics*, 382 F. App'x 436 (6th Cir. 2010). Those material differences may lead to a distinct approach, just as the differences between class actions and collective actions required different approaches today.

We affirm.

––––––––––––––––––

**DISSENT**

––––––––––––––––––

BERNICE BOUIE DONALD, Circuit Judge, dissenting.  The question presented to us today is whether a federal court may assert jurisdiction over a defendant in an FLSA collective action when nonresident opt-in plaintiffs who form the collective allege that they were harmed by the defendant outside of the forum state in which the federal court is located.  In the first 79 years since the enactment of the FLSA, the answer to that question was simple: "Yes."

However, in 2017, employers began arguing that the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773 (2017) prohibited federal courts from exercising specific personal jurisdiction over defendants with respect to claims brought by out-of-state plaintiffs in FLSA collective actions.  In *Bristol-Myers*, the Supreme Court concluded that the Due Process Clause of the Fourteenth Amendment prohibited California's *state* courts from exercising personal jurisdiction over the claims of nonresident plaintiffs in a mass tort action, where the nonresident plaintiffs' claims had no connection to California other than the fact that the California plaintiffs alleged the same injuries.  The Supreme Court explained that "[b]ecause a state court's assertion of jurisdiction exposes defendants to the State's coercive power, it is subject to review for compatibility with the Fourteenth Amendment's Due Process Clause, which limits the power of a state court to render a valid personal judgment against a nonresident defendant."  *Id.* at 1779.  (internal quotations and citations omitted).  The Court concluded that "California courts [could not] claim specific jurisdiction" because "[t]he relevant plaintiffs [were] not California residents and [did] not claim to have suffered harm in that State[,]" and "all the conduct giving rise to the nonresidents' claims occurred elsewhere[.]"  *Id.* at 1782.

*Bristol-Myers* is inapplicable to this case, which was filed in *federal* court and is based on a *federal* statute that permits representative action.  The *Bristol-Myers* Court simply addressed the limitations of state courts in their exercise of personal jurisdiction over nonresidents with respect to matters of state law.  The majority, however, stretches *Bristol-Myers* to conclude that it strips federal courts of their ability to assert specific jurisdiction over claims brought by non-

resident plaintiffs in an FLSA collective action. In doing so, the majority concludes that the district court correctly granted Anthem's motion to dismiss three out-of-state nurses for lack of personal jurisdiction based on those nurses' failure to demonstrate any connection between their injuries and Anthem's activities in Tennessee, the forum state in which the district court sits. I disagree with the majority's application of *Bristol-Myers* and would conclude that the district court should have denied Anthem's motion to dismiss. Accordingly, I respectfully dissent.

## I.

The Fair Labor Standards Act ("FLSA") outlines the collective action procedure as follows:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b).

Plaintiff Laura Canaday ("Canaday") is a utilization management review nurse for Anthem in Tennessee. Canaday filed a proposed FLSA collective action in the district court, alleging that Anthem misclassified her and other "similarly situated" Anthem nurses "whose primary job was to perform medical necessity reviews" as exempt from overtime pay. (R. 1 at PageID 1). Several nurses (collectively "plaintiffs") opted into the collective by filing written consent with the district court and then moved for conditional class certification. Anthem moved to dismiss three out-of-state opt-in plaintiffs ("the nonresident opt-in plaintiffs") for lack of personal jurisdiction. Adopting a Magistrate Judge's recommendation, the district court concluded that *Bristol-Myers* required the nonresident opt-in plaintiffs to demonstrate that their claims were related to or arose from Anthem's activities in Tennessee. Because the nonresident opt-in plaintiffs could not make this showing, the district court dismissed them without prejudice for lack of personal jurisdiction. The district court did, however, grant conditional certification with respect to the in-state putative plaintiffs. Canaday then moved to certify the district court's order for interlocutory appeal. The district court granted her motion, and so did this Court.

Anthem argues that the district court correctly dismissed the nonresident opt-in plaintiffs, because *Bristol-Myers* and Rule 4 of the Federal Rules of Civil Procedure impose limitations on the district court's ability to hear their claims.  Plaintiffs argue that *Bristol-Myers* does not apply to FLSA collective actions in federal court and that basic principles of personal jurisdiction should have permitted the district court to exercise specific personal jurisdiction over the claims of the non-resident opt-in plaintiffs.  Integral to Plaintiffs' arguments is our recent decision in *Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021), where we held that *Bristol-Myers* does not apply to Rule 23 class actions.  Plaintiffs contend that *Lyngaas* requires us to conclude that *Bristol-Myers* should likewise not apply to FLSA collectives.  I address each of these arguments in turn.

II.

We review *de novo* the district court's dismissal of the nonresident opt-in plaintiffs' claims for lack of personal jurisdiction.  *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).

Because the parties' arguments hinge in large part on the applicability of *Bristol-Myers* to the present case, some background as to that case is necessary.  In *Bristol-Myers,* a group of plaintiffs, made up of mostly out-of-state residents, filed eight separate complaints in California state court against the defendant for product liability concerning the pharmaceutical drug Plavix.  137 S. Ct. at 1777.  Under a unique California procedural rule, the trial court consolidated eight separate lawsuits into a singular mass tort action, even though a majority of the plaintiffs were not California residents, were not prescribed Plavix in California, and did not consume Plavix in California.  *Id.*  The defendant's only connection to California was that it sold Plavix in the state. *Id.* at 1778.  In asserting personal jurisdiction over the nonresident plaintiffs' claims, the California Supreme Court used a "sliding scale approach" to conclude that "the strength of the requisite connection between the forum and the specific claims at issue [was] relaxed if the defendant ha[d] extensive forum contacts that are unrelated to those claims."  *Id.* at 1781.  The Supreme Court admonished the "sliding scale approach" and reversed, explaining that there was no "connection between the forum and the specific claims at issue."  *Id.*  Specifically, the Court explained that "[t]he mere fact that [some] plaintiffs were prescribed, obtained and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not

allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781. In arriving at this conclusion, the Court stressed that "restrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or distant litigation[;] [t]hey are a consequence of territorial limitations on the power of the respective States.'" *Id.* at 1780 (quoting *Hansen v. Denckla*, 357 U.S. 235, 251 (1958)). The Court did, however, "leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784.

District courts have been split as to whether *Bristol-Myers* applies to FLSA collective actions. The district courts that find *Bristol-Myers* inapplicable to FLSA collective actions tend to follow the reasoning in *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017), where a California federal district court explained:

> Unlike the claims at issue in *Bristol-Myers*, we have before us a federal claim created by Congress specifically to address employment practices nationwide. *See* 29 U.S.C. [§§] 202, 207(a). Congress created a mechanism for employees to bring their claims on behalf of other employees who are "similarly situated," and in no way limited those claims to in-state plaintiffs. 29 U.S.C. [§] 216(b). Thus, our circumstances are far different from those contemplated by the Supreme Court in *Bristol-Myers*.

*Id.* at *2.

Courts that find *Bristol-Myers* applicable to FLSA collective actions tend to follow reasoning similar to that expressed in *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018), where an Ohio federal district court held that *Bristol-Myers* "divests courts of specific jurisdiction over the FLSA claims of [nonresident] plaintiffs against [a nonresident defendant]."

I agree with the *Swamy* line of cases and will address herein why I believe *Bristol-Myers* does not apply to this case. But distinguishing *Bristol-Myers* does not, in itself, permit the district court to exercise personal jurisdiction over Anthem. Rather, we must first assess whether "[t]he party seeking to assert personal jurisdiction [has met its] burden of demonstrating that such jurisdiction exists." *Youn v. Track, Inc.*, 324 F.3d 409 (6th Cir. 2003). I turn to that inquiry next.

III.

**A.  The district court should have asserted personal jurisdiction over Anthem with respect to the nonresident opt-in plaintiffs' claims.**

**1.  The district court can exercise personal jurisdiction over Anthem as to the entire "suit."**

The debate at the heart of this appeal is whether Canaday's claims—or, more generally—the claims of a named plaintiff in an FLSA collective action, standing alone, are sufficient to confer personal jurisdiction over a corporate defendant *as to the entire lawsuit*.

Canaday first argues that because she filed this action in federal court, we should conduct our personal jurisdiction analysis under the limitations of the Fifth Amendment rather than the Fourteenth Amendment.  However, even if the Fifth Amendment is the applicable constitutional limitation on a federal court's authority to exercise personal jurisdiction, "[t]here also must be a basis for the defendant's amenability to service of summons."  *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  That requires us to look to Rule 4(k)(1) of the Federal Rules of Civil Procedure, which imposes territorial limits on service of process.  Rule 4(k)(1) states as follows:

> Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>
> (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
>
> (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or
>
> (C) when authorized by a federal statute.

The FLSA does not explicitly authorize nationwide service of process (Rule 4(k)(1)(c)) nor did Canaday join Anthem under Federal Rule 14 or 19 (Rule 4(k)(1)(b)).  We are thus left with only Rule 4(k)(1)(A), which tells us that our personal jurisdiction analysis is guided by whether the forum state—in this case, Tennessee—could assert personal jurisdiction over Anthem.  Tennessee's long-arm statute (Tenn. Code Ann. § 20-2-214(a)(6)) permits Tennessee courts to exercise jurisdiction to the full extent allowable under the Due Process Clause of the

Fourteenth Amendment. *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005). Therefore, even though we are in federal court, Rule 4 requires us to conduct our personal jurisdiction analysis under the Fourteenth Amendment.[1]

The Due Process Clause of the Fourteenth Amendment permits state courts to exercise personal jurisdiction over an out-of-state defendant only if the defendant had "certain minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted). As to corporate defendants, the Fourteenth Amendment permits two forms of personal jurisdiction: general and specific. To invoke general jurisdiction, a plaintiff must show that the defendant is "at home" in the forum state, meaning that the defendant is incorporated or has its principal place of business there. *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014).

Anthem is headquartered in Indiana and is not "at home" in Tennessee, meaning that general jurisdiction is lacking. Thus, we must look to specific jurisdiction, in which our analysis "focuses on the relationship among the defendant, the forum, and *the litigation*." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added) (internal quotation marks omitted). To invoke specific jurisdiction, we require the following:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Means v. United States Conf. Catholic Bishops,* 836 F.3d 643, 649 (6th Cir. 2016) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)).

---

[1]Canaday argues that if the Fifth Amendment—rather than the Fourteenth Amendment—sets the outer boundaries of a federal court's jurisdiction, then Canaday would need only demonstrate that Anthem has contacts with "the *United States* as a whole[]" in order for the district court to exercise personal jurisdiction over the entire collective. (Appellant Br. at 5) (emphasis in original) (internal quotations and citations omitted). We need not address this argument, because, as mentioned above, the requirements of Rule 4 mandate that we conduct our personal jurisdiction analysis under the Fourteenth Amendment in this case.

Here, Canaday worked for Anthem in Tennessee, and the claims set forth in her complaint were based on Anthem's conduct in Tennessee. Further, by conducting business in Tennessee, Anthem has purposefully availed itself of the privilege of acting in the state. Anthem does not dispute these points, nor does it contest that the district court had specific personal jurisdiction over Anthem with respect to Anthem's alleged failure to pay *Canaday* for her overtime pay.

Anthem argues, however, that the district court's authority to exercise personal jurisdiction over Anthem as to Canaday's claims is not enough to confer personal jurisdiction over Anthem as to the entire collective. The majority agrees with Anthem and states that, for the district court to exercise personal jurisdiction over Anthem as to the entire action, "there [must be] a claim-specific and Anthem-specific relationship between the out-of-state claims and Tennessee." Maj. Op. at 5. However, the majority's framing of the jurisdictional inquiry is at odds with the Supreme Court's instructions that we are to examine personal jurisdiction at *the level of the suit*, not at the level of any particular claim or party. *See Bristol-Myers*, 137 S. Ct. at 1780 ("In order for a state court to exercise specific jurisdiction, *the suit* must arise out of or relate to the defendant's contacts with the *forum*.") (emphasis in original) (internal quotations and citations omitted).[2] An FLSA collective action is designed to be a single lawsuit throughout the entire litigation process. The singularity of the lawsuit does not change simply because new plaintiffs with the same or similar claims as to the named plaintiff might join the collective at a later time.[3] Therefore, in this case, the only lawsuit is between Canaday and Anthem, and the specific jurisdiction analysis must be conducted at the level of Canaday's claims. The district court already has personal jurisdiction over those claims through the original complaint.

---

[2]The *Bristol-Myers* Court could not examine personal jurisdiction at the level of one lawsuit, because, in the mass tort context at issue in that case, the consolidated lawsuit was comprised of claims spread across *separate and distinct* lawsuits.

[3]Section 216(b)'s "similarly situated" requirement provides assurance that the collective retains its singular character. Although the FLSA itself does not provide a definition for "similarly situated," we have said that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). The "similarly situated" requirement is also satisfied if the employees' claims are "unified by common theories of defendants' statutory violations[.]" *Id.* Those statutory safeguards ensure that a collective will always be a singular lawsuit, not an aggregation of unrelated claims.

Thus, even if the nonresident opt-in plaintiffs would not be able to independently establish personal jurisdiction over Anthem in Tennessee, they need not do so here.**4**

### 2. Rule 4(k)(1)(A) does not require each opt-in plaintiff to individually serve Anthem.

Anthem contends that there is an implied requirement in Rule 4(k)(1)(A) that each opt-in plaintiff in an FLSA collective action *individually* establish personal jurisdiction over the defendant by service of process. As Anthem would have it, the district court would have to conduct a separate personal jurisdiction analysis for each party as if each party had filed their own unique complaint. But a careful examination of Rule 4 contains only one operative command: "[a] summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1). Rule 4(b) ties that command to "*the* plaintiff" who has filed a complaint. Fed. R. Civ. P 4(b). (emphasis added). We know from our above analysis that valid service of summons "establishes personal jurisdiction over a defendant [] who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Id.* 4(k)(1)(A). Thus, the only logical reading of Rule 4 is that service is deemed effective based *only* on whether the *original named plaintiff* complies with Rule 4. Anthem does not argue that Canaday failed to comply with this requirement, and because Canaday represents the entire suit, *see Bristol-Myers*, 137 S. Ct. at 1780, it does not matter that additional plaintiffs from different locations might eventually opt in to the collective. Once Canaday properly served Anthem with the complaint, the district court could assert personal jurisdiction over the entire action. Rule 4(k)(1)(A) imposes no additional requirements.**5**

---

**4**Additionally, Anthem must already defend against Canaday's claims in Tennessee, so it can hardly claim that there is anything unreasonable or unfair about having to litigate the entire action in the same forum. If anything, proceeding in a single unified action benefits Anthem. Instead of having to litigate multiple FLSA actions across different jurisdictions, Anthem can defend the same employment policy in one single proceeding.

**5**Anthem's demands that each opt-in plaintiff satisfy unwritten Rule 4(k)(1)(A) requirements ring hollow in light of the text of the FLSA, which requires that opt-ins need only provide "consent in writing" to join the "action." 29 U.S.C. 216(b). *See also Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2013) ("The plain language of § 216(b) supports that those who opt in become party plaintiffs upon the filing of a consent and that *nothing further* … is required.") (emphasis added). The Supreme Court has further recognized that Section 217(b) "grant[s] the court [with] the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). Anthem's understanding of

### 3. Alternatively, the non-resident opt-in plaintiffs' claims still "relate to" Anthem's conduct in Tennessee.

Even if we conducted our personal jurisdiction analysis at the "claim" level rather than the "suit" level, the district court could still exercise personal jurisdiction over the non-resident opt-in plaintiffs' claims. Although it is true that the nonresident plaintiffs did not actually suffer injuries in Tennessee, we only require that they demonstrate that the "defendant's contacts with the forum state are *related to* the operative facts of the controversy" in order to "deem[] [an action] to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996) (emphasis added). "We have said this is a 'lenient standard,' requiring only that the cause of action have a 'substantial connection' to the defendant's activity in the state." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)).

Even though the nonresident plaintiffs were allegedly injured by Anthem's nationwide conduct in states outside the forum, it does not mean that their claims do not "relate to" Anthem's conduct in Tennessee. Presumably, Anthem employed the challenged overtime classification policy full well knowing that any of its employees, regardless of their residence, could initiate a collective action challenging that policy under the FLSA. That Canaday was simply the first employee to file suit does not mean that another Anthem employee in another state could not have initiated the very same lawsuit in a different federal court. Because the nonresident plaintiffs' injuries stem from the exact same policy under which Canaday brings her individual claims, they have demonstrated the requisite "connect[ion] with" Anthem's conduct in Tennessee. *Int'l Shoe*, 326 U.S. at 319.

Accordingly, the district court should have exercised personal jurisdiction over Anthem as to the nonresident opt-in plaintiffs' individual claims.

---

Rule 4(k)(1)(A) is hardly compatible with this directive. There is nothing "orderly" or "sensible" about permitting FLSA collective litigation but requiring that each member of the action effectively initiate a separate lawsuit in order to participate.

**B. *Bristol-Myers* does not require dismissal of the nonresident opt-in plaintiffs.**

Anthem contends that *Bristol-Myers* compels dismissal of the nonresident opt-in plaintiffs' claims, because, in Anthem's view, an FLSA collective action is similar to the problematic mass tort action that was front and center in *Bristol-Myers*. Anthem makes a faulty comparison, and in doing so, overstates the import of *Bristol-Myers*.

The primary focus of the *Bristol-Myers* Court was simply to reaffirm two long-standing and uncontroversial principles of horizontal federalism: (1) that each state court system retains a degree of exclusivity in adjudicating state-law claims arising out of activities within its own borders, and (2) that due process protects a non-resident defendant from having to submit to the coercive power of a *state* court that lacks a legitimate *state* interest in hearing particular claims against that defendant. This case does not implicate either of those concerns.

Contrary to Anthem's position, *Bristol-Myers* did not mark a major shift in our jurisprudence on personal jurisdiction. Indeed, the Supreme Court itself referred to the decision as a "straightforward application . . . of settled principles of personal jurisdiction[.]" 137 S. Ct. at 1783. Just this year, the Court clarified that its primary concern in *Bristol-Myers* was that the nonresident plaintiffs in that case were "engag[ing] in forum-shopping—suing in California because it was thought plaintiff-friendly, even though their cases had no tie to the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (citing *Bristol-Myers*, 137 S. Ct. at 1782-83). This strategy, the *Bristol-Myers* Court held, offended principles of interstate federalism, because California's courts were effectively aggrandizing their power at the expense of the states where the injuries of the nonresident plaintiffs actually occurred. *See Bristol-Myers*, 137 S. Ct. at 1777 (explaining that personal jurisdiction analysis "encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question."). When this case was before the California Supreme Court, Justice Werdegar pointedly examined this problem in her dissenting opinion:

> California has no discernable sovereign interest in providing an Ohio or South Carolina resident a forum in which to seek redress for injuries in those states caused by conduct occurring outside California. A mere resemblance between the nonresident plaintiffs' claims and those of California residents creates no

> sovereign interest in litigating those claims in a forum to which they have no substantial connection.

*Bristol-Myers Squibb Co. v. Superior Ct.*, 377 P.3d 874, 899 (Cal. 2016) (Werdegar, J., dissenting).

This concern and respect for state sovereignty made sense in *Bristol-Myers*. When the defendant in that case sold Plavix outside of California to a non-California resident, the defendant could have hardly contemplated that it might be haled into California state court—and *subjected to California state law*—based on that transaction. The states where the nonresident plaintiffs' injuries occurred would have had a stronger interest in resolving those claims. The fact that a nonresident's lawsuit was similar to that of a California resident did not, in itself, obviate the need for California's courts to assert jurisdiction over the entire consolidated action.

But the "territorial limitations on the power of the respective States" are not present in this case. *Bristol-Myers*, 137 S. Ct. at 1780. This case arises entirely under federal law, and federal power is not limited by state lines. The home states of the nonresident opt-in plaintiffs do not have any greater interest than Tennessee does in hearing this case, because the only sovereign whose interests are at issue in this case is the United States. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality opinion) (explaining that the federal government has "its own direct relationship, its own privity, its own set of mutual rights and obligations to people who sustain it and are governed by it.") (internal quotation and citation omitted). Thus, even if the district court exercised jurisdiction over the entire collective action, including the claims of the nonresident opt-in plaintiffs, it would not encroach on the sovereignty of any state. *See Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265, 1271 (6th Cir. 1984) ("When a federal court is hearing and deciding a federal question case there are no problems of 'coequal sovereigns.'") (quoting *World-Wide Volkswagen*, 444 U.S. at 292). To that end, Anthem cannot credibly argue that, by having to defend the entire action in Tennessee, it is being haled into an unfamiliar or coercive forum "solely as a result of random, fortuitous, or attenuated contacts[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citations omitted). Nor can Anthem complain that it is a victim of forum-shopping because federal law is to be implemented and interpreted uniformly throughout the nation in *all* courts.

*See Handley*, 732 F.2d at 1269 ("When a court, state or federal, adjudicates a federal claim, the federalism issue is of no relevance, for the court determines the parties' rights and liabilities under uniform, national law.") (quoting *DeJames v. Magnificence Carries, Inc.*, 654 F.2d 280, 292 (3d Cir. 1981) (Gibbons, J., dissenting)). Neither state law nor state courts are involved in this case, so Anthem is not more or less likely to receive a particular result based on the federal court where the lawsuit originates.

The mass action in *Bristol-Myers* also differs from the FLSA collective action in a critical way—each individual plaintiff in *Bristol-Myers* was a real party in interest and each individual lawsuit retained a separate identity. The mass action was not so much one lawsuit with several different plaintiffs, but actually several different lawsuits consolidated as one action. That consolidation would not have created any sense of efficiency. If anything, it might have made matters more complicated for the California trial court that could have potentially been forced to address a litany of burdensome choice-of-law issues that might have led to divergent outcomes. *See Gulf Oil v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is an appropriateness … in having the trial … in a forum that is at home with the *state* law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.") (emphasis added).

In contrast, an FLSA collective action is not a consolidated series of separate lawsuits; rather, it is a single representative action, which proceeds on the basis that one (or more) named plaintiff(s) represents the claims of the entire collective. More importantly, the collective action is part of a comprehensive federal regulatory scheme that contemplates and strives for efficient resolution of FLSA claims. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008) (explaining that "purposes of § 216(b) actions under the FLSA [are] (1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issue of law and fact that arise from the same illegal conduct."). These critical differences—coupled with the fact that *Bristol-Myers* did not proscribe any limitations on federal jurisdiction over federal collective actions—requires us to conclude that *Bristol-Myers* does not prevent the district court's assertion of personal jurisdiction over Anthem.

**C. This Court recently held that *Bristol-Myers* does not apply to class action lawsuits. The same reasoning requires us to conclude that *Bristol-Myers* does not apply to collective actions.**

Our recent decision in *Lyngaas* forecloses Anthem's argument that *Bristol-Myers* applies to collective actions in federal court. In *Lyngaas*, we held that *Bristol-Myers* does not prevent federal courts from exercising personal jurisdiction over non-resident defendants in Rule 23 class actions if the named plaintiff's claim arises out of or relates to the defendant's forum contacts. *Id.* at 433. The *Lyngaas* Court explained that in mass tort actions, like those at issue in *Bristol-Myers*, "individual issues might present significant variations such that a defense would require different legal theories or different evidence." *Id.* at 435 (quotation and citation omitted). In a class action, however, the Court explained that "the defendant is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense." *Id.* (quotation omitted).

The majority contends that *Lyngaas* carves out an exception to *Bristol-Myers* that applies only to class actions, but not to collectives. That is, the majority argues, because collective actions more closely resemble mass-tort actions in that they are of an "individual nature," unlike class actions, which are of a "representative nature."

True, as the majority points out, that unlike in a Rule 23 class action, whose members are bound by the judgment unless they "opt-out," members of an FLSA collective action must affirmatively "opt-in" to the action to be bound. However, that distinction speaks only to a difference in procedural mechanics, not as to any underlying substantive differences between classes and collectives. The "opt-out" vs. "opt-in" distinction does not detract from the fact that both class and collective actions are single representative lawsuits. More importantly, missing from the majority's analysis is any explanation as to why that distinction is relevant to the applicability of *Bristol-Myers*, which, as mentioned above, was a decision rooted in concerns over federalism and the territorial reach of *state* courts.[6]

---

[6]For similar reasons, I conclude that the other differences the majority highlights are also merely mechanical distinctions—such as (1) the different "procedural protections" afforded to defendants in each type of action, (2) the different treatment of statutes of limitations in the class vs. collective context, (3) the limitations on

To support its position, the majority claims that since 1947, the FLSA, by its own terms, has not permitted "representative litigation." Maj. Op. at 13. But this is a mischaracterization of the 1947 amendments to § 216(b) of the FLSA. Under the pre-1947 version of § 216(b), individuals who did "not themselves possess[] claims[,]" such as union officials, were permitted to file collective actions on behalf of employees. *Hoffman-La Roche*, 493 U.S. at 173. These "representatives" had vast power to initiate collective actions and could file them even without the authorization of the affected employees. *Id.* In response to a feared surge in litigation by named plaintiffs who "lack[ed] a personal interest in the outcome" of the litigation, Congress enacted the Portal-to-Portal Act of 1947 to ban these "representative" actions and required that each employee provide consent in writing in order to be a party to the case. *See* Portal-to-Portal Act of 1947, Ch. 52, 61 Stat. 84; *Hoffman-La Roche*, 493 U.S. at 173. During the 1947 Congressional debates on the FLSA amendments, Senator Donnell, the chairman of the drafting subcommittee, remarked that the new opt-in requirement in § 216(b) was merely part of an effort to eliminate the "unwholesome" practice of allowing suits under the FLSA which were "not brought with the actual consent or agency of the individuals for whom an ostensible plaintiff filed the suit." 93 Cong. Rec. 538, 2182 (1947). But more tellingly, at least for purposes of the case before us, Senator Donnell explained that the subcommittee had "no objection" to "a suit brought by one collectively *for himself* and others." *Id.* (emphasis added). Senator Donnell's comments underscore that Congress was simply trying to ban spurious representative actions, not eliminate the representative nature of collective actions altogether. *See also Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) (explaining that Portal-to-Portal Act's enforcement scheme "largely codified the existing rules governing spurious class actions, with special provisions intended to redress the problem of representative actions brought by unions under earlier provisions of the FLSA and the problem of 'one-way' intervention."). A "representative"—in the context of the 1947 amendments—merely referred to someone who did not stand to personally receive an award in an FLSA collective action; it did not literally encompass all "representatives" as that term might be understood today. The 1947 amendments are better understood as clarifying *who* could represent the collective, not that collectives lost

who can legally represent class members vs. collective members. These distinctions neither alter a collective's status as a single representative action nor do they bear on any due process concerns expressed in *Bristol-Myers*.

their character as singular, representative actions.  *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 435 (5th Cir. 2021) ("The Portal-to-Portal Act takes into account the dual goals of collective actions: (1) enforcement (by preventing violations and letting employees pool resources when seeking relief); and (2) efficiency (by resolving common issues in a *single action*).") (emphasis added).

Anthem still contends that a collective action is more like a mass tort action simply because putative plaintiffs obtain "party" status once they opt in.  *See* 29 U.S.C. 216(b) ("[N]o employee shall be a *party* plaintiff to any such action unless he gives his consent in writing to become such a *party* and such consent is filed in the court in which such action is brought.") (emphasis added).  Anthem has not explained how the "party" label changes the representative nature of the collective, and there does not appear to be much guidance on that issue.  *See, e.g.*, *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) ("This prompts the as-yet unanswered question of what 'party status' means in a collective action, particularly before a district court has considered whether those who have filed consent forms are in fact 'similarly situated' to the named plaintiff for purposes of § 216(b).").  Moreover, the Supreme Court has informed us that individuals can be "parties" for some purposes but not for others. *Devlin v. Scardelleti*, 536 U.S. 1, 9-10 (2002) ("The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.").

I do not find any support in the text of the FLSA or in case law that would suggest that "party" status makes a collective action more like a mass tort action or meaningfully different from a class action.  In the context of the 1947 amendments, the most likely reading of the "party" label is that Congress meant to codify the existing rules permitting the actual parties in interest—the employees—to participate in the collective and to emphasize that "representatives"—such as union leaders—could no longer participate in such actions.  At most, the "party" label appears to be nothing more than a judicial housekeeping measure to confirm that opt-in plaintiffs are on equal footing with the named plaintiff once they join the collective. *See, e.g.*, *Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003) ("[B]y referring to them as 'party plaintiff[s]' Congress indicated that opt-in plaintiffs should have the same status in

relation to the claims of the lawsuit as do the named plaintiffs."). Whatever status the "party" label might confer on opt-in plaintiffs, it does not radically alter the overall representative character and nature of the collective, which retains its status as a single lawsuit. Accordingly, I find that it does not change our personal jurisdictional analysis.[7]

## IV.

Today's decision ignores that Congress developed the collective-action mechanism as a tool of efficiency, to promote the expedient resolution of FLSA claims in a single proceeding. Given Congress' aims of uniformity and efficiency, "broad coverage [of the FLSA] is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985). Courts thus "consistently construe[] the Act 'liberally to apply to the furthest reaches consistent with congressional direction.'" *Id.* (quoting *Mitchell v. Lublin, McCaughy & Assocs.*, 358 U.S. 207, 211 (1959)). The majority dismisses and downplays these policy aims, and its decision minimizes our longstanding embrace and value placed on representative litigation.

Less than a decade after the FLSA became law, the Supreme Court described the collective action as "a common-sense and economical method of regulation" that "puts directly into the hands of the employees … the means and ability to assert and enforce their rights," so that they "will not suffer the burden of an expensive lawsuit." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 n.16 (1945) (quoting 83 Cong. Rec. 9264 (1938)). And in the years since, courts have consistently praised the collective action as one of the most powerful tools in the effective resolution of FLSA claims and the promotion of judicial economy against the backdrop

---

[7]Canaday also argues that pendent personal jurisdiction provides another source for the district court's authority to hear the nonresident opt-in plaintiffs' claims. "Pendent personal jurisdiction is a common law doctrine that recognizes the inherent fairness of exercising personal jurisdiction over claims asserted against a Defendant over whom the Court already has personal jurisdiction with respect to another claim or claims arising out of the same nucleus of operative facts." *J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08 CV 977, 2009 WL 385611, at *21 (N.D. Ohio Feb. 13, 2009). Dismissal of those claims "would create inefficiencies by forcing claims arising out of a common nucleus of operative facts to be tried in different jurisdictions." *Capitol Specialty Ins. Corp. v. Splash Dogs LLC*, 801 F. Supp. 2d 657, 667 (S.D. Ohio 2011). However, as the majority points out, this Court has not explicitly recognized this doctrine. Moreover, because I have already concluded that the Fourteenth Amendment does not limit the district court's exercise of personal jurisdiction over Anthem as to the nonresident plaintiffs' claims, I find it unnecessary to determine whether pendent personal jurisdiction applies in this case.

of an increasingly complex national economy.  *See Hoffman-La Roche*, 493 U.S. at 170 (explaining that by "lower[ing] individual costs to vindicate rights by the pooling of resources," Congress sought to encourage "efficient resolution [of FLSA claims] in one proceeding."); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020) ("The twin goals of collective actions are enforcement and efficiency: enforcement of the FLSA, by preventing violations of the overtime-pay requirements and by enabling employees to pool resources when seeking redress for violations; and efficiency in the resolution of disputes, by resolving in a single action common issues arising from the same alleged illegal activity."); *Halle v. W. Allegheny Health Sys. Inc.*, 842 F.3d at 223 ("By permitting employees to proceed collectively, the FLSA provides employees the advantages of pooling resources and lowering individual costs so that those with relatively small claims may pursue relief where individual litigation might otherwise be cost-prohibitive.  It also yields efficiencies for the judicial system through resolution in one proceeding of common issues arising from the same allegedly wrongful activity affecting numerous individuals.").

The effect of today's decision is quite stark.  By holding that a federal district court may not assert personal jurisdiction over claims brought by nonresident opt-in plaintiffs as part of an FLSA collective action, the majority forces those plaintiffs to file separate lawsuits in separate jurisdictions against the same employer based on the same or similar alleged violations of the FLSA.  Actions that combined hundreds of claims based on similar violations of the FLSA will now be splintered into dozens, if not hundreds, of lawsuits all over the country.  Under that regime, nobody wins.  Not the courts, not employees, and not employers.  The practice will undoubtedly result in piecemeal litigation, potentially divergent outcomes for similarly situated plaintiffs, and major inefficiencies for the federal courts.

Congress could never have intended collective actions to be fractured in this way, and I fear that the majority has cloaked nationwide employers with unwarranted jurisdictional-armor to fend off FLSA collective action litigation.

I respectfully dissent.