PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1683

_____

CHRISTA B. FISCHER, INDIVIDUALLY AND ON
BEHALF OF OTHER SIMILARLY SITUATED
EMPLOYEES,
Appellant

v.

FEDERAL EXPRESS CORP.;
FEDEX GROUND PACKAGE SYSTEM

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil No. 5-19-cv-04924
District Judge: Honorable John M. Gallagher

_____

Argued: January 26, 2022

Before: RESTREPO, MATEY, and SCIRICA,
*Circuit Judges*.

(Filed: July 26, 2022)

Kelly A. Burgy
Benjamin L. Davis, III
Scott E. Nevin
Suite 1700
36 South Charles Street
Baltimore, MD  21201

Adam W. Hansen [ARGUED]
Apollo Law
333 Washington Avenue North
Suite 300
Minneapolis, MN  55401

Colin R. Reeves
Apollo Law
1314 Pacific Street
Brooklyn, NY  11216

Scott M. Pollins
800 Westdale Avenue
Swarthmore, PA  19081

   *Counsel for Appellants Christa B. Fischer and Andre
   Saunders*

Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, DC  20009

   *Counsel for Amicus Appellant Public Citizen Inc*

Frederick L. Douglas [ARGUED]
Brandon D. Pettes
Federal Express Corporation
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, TN  38125

 *Counsel for Appellee Federal Express Corp*

Benjamin Ferron, Esq.
FedEx Ground Package System, Inc.
1000 FedEx Drive
Moon Township, PA  15108

 *Counsel for Appellee FedEx Ground Package System*

David R. Fine
K&L Gates
17 North Second Street
18th Floor
Harrisburg, PA  17101

 *Counsel for Amicus Appellee Chamber of Commerce of*
 *the United States of America*

Philip S. Goldberg, Esq.
Shook Hardy & Bacon
1800 K. Street, NW
Suite 1000
Washington, DC 20006

*Counsel for Amicus Appellee International Association of Defense Counsel*

––––––––––––––––––

OPINION OF THE COURT

––––––––––––––––––

**SCIRICA**, *Circuit Judge*

Appellant Christa Fischer, a Pennsylvania resident who worked for nearly ten years as a security specialist for Appellees Federal Express Corp. ("FedEx") and FedEx Ground Package System ("FedEx Ground"), brought this collective action under Section 216(b) of the Fair Labor Standards Act ("FLSA") in the Eastern District of Pennsylvania. Fischer alleges FedEx misclassified her and other FedEx security specialists as exempt from the FLSA's overtime rule and underpaid them.

Two out-of-state former FedEx employees, Andre Saunders, from Maryland, and Andrew Rakowsky, from New

4

York, submitted notices of consent, seeking to join Fischer's collective action. Saunders and Rakowsky both worked for FedEx in their home states but, other than FedEx's allegedly uniform nationwide employment practices, have no connection to Pennsylvania related to their claims. The District Court did not allow these two opt-in plaintiffs to join the suit, reasoning that, as would be true for a state court under *Bristol-Myers Squibb Co. v. Superior Ct.*, __ U.S. __, 137 S. Ct. 1773 (2017), the district court lacked specific personal jurisdiction over FedEx with respect to the out-of-state plaintiffs' claims.

We granted Appellants' petition for interlocutory appeal to resolve whether, in an FLSA collective action in federal court where the court lacks general personal jurisdiction over the defendant, all opt-in plaintiffs must establish specific personal jurisdiction over the defendant with respect to their individual claims. The Sixth and Eighth Circuits have answered in the affirmative, holding FLSA opt-in plaintiffs' claims must arise out of or relate to the defendant's minimum contacts with the forum state. *See Canaday v. Anthem Cos.*, 9 F.4th 392 (6th Cir. 2021); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861 (8th Cir. 2021). The First Circuit has answered in the negative, holding that, while initial plaintiffs' claims must arise out of or relate to the defendant's minimum contacts with the forum state—the test of the constitutional limit under the Fourteenth Amendment—opt-in plaintiffs' claims need only arise out of or relate to a defendant's minimum contacts with the entire nation—the test of the constitutional limit under the Fifth Amendment. *See Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022).

We join the Sixth and Eighth Circuits and hold that,

5

where the basis of personal jurisdiction in an FLSA collective action in a federal court is specific personal jurisdiction established by serving process according to Federal Rule of Civil Procedure 4(k)(1)(A), every plaintiff who seeks to opt in to the suit must demonstrate his or her claim arises out of or relates to the defendant's minimum contacts with the forum state. In this way, the specific personal jurisdiction analysis for an FLSA collective action in federal court operates the same as it would for an FLSA collective action, or any other traditional in personam suit, in state court. Accordingly, we will affirm the District Court's judgment because the out-of-state opt-in plaintiffs here cannot demonstrate their claims arise out of or relate to FedEx's contacts with Pennsylvania.

I.

Appellant Christa Fischer is a Pennsylvania resident who worked for FedEx in Lewisbury and Williamsport, Pennsylvania from approximately August 2005 to July 2019. On October 22, 2019, she filed a complaint against FedEx in the Eastern District of Pennsylvania, alleging FedEx misclassified employees in her position as exempt from the FLSA's overtime rule and, accordingly, seeking unpaid overtime. Under the FLSA's collective action device in 29 U.S.C. § 216(b), Fischer brought her suit on behalf of herself and "other similarly situated employees," alleging FedEx had misclassified these employees around the country. FedEx[1] is

[1] Before the District Court, Appellants argued that FedEx Ground was a joint employer with FedEx. And since FedEx Ground has a principal place of business in Pennsylvania, it would be subject to general jurisdiction in Pennsylvania. The

incorporated in Delaware and its principal place of business is in Tennessee.

On May 15, 2020, Fischer filed a motion for conditional certification and court-authorized notice. On July 17, 2020 and July 28, 2020, respectively, Andre Saunders, from Maryland, and Andrew Rakowsky, from New York, submitted notices of consent to join the litigation. Neither Saunders nor Rakowsky worked for FedEx in Pennsylvania. And neither has alleged any other connections to FedEx in Pennsylvania. On December 23, 2020, the trial judge granted Fischer's motion for conditional certification.

The District Court held that, because no federal statute authorizes nationwide service of process for opt-in plaintiffs in FLSA collective actions, Fed. R. Civ. P. 4(k)(1)(A) requires a federal court to follow the personal jurisdiction rules applicable to a state court, including the requirement clarified in *Bristol-Myers* that all claims must arise out of or relate to the defendants' minimum contacts with the forum state. Considering the facts in this case, the District Court concluded it lacked personal jurisdiction over FedEx with respect to the putative opt-in plaintiffs who worked for FedEx outside Pennsylvania. Accordingly, the District Court only certified the collective action and authorized notice with respect to security specialists employed by FedEx in Pennsylvania. The

---

trial judge found that FedEx Ground was not a joint employer, and thus its principal place of business has no bearing on the jurisdictional analysis. *Fischer v. Fed. Express Corp.*, 509 F. Supp. 3d 275, 290 (E.D. Pa. 2020). Appellants do not appeal this finding, and we see no reason to disturb it.

plaintiffs now appeal that decision, arguing that the District Court erred in applying *Bristol-Myers* to this FLSA collective action because it was filed in federal court.

## II.

We begin with a brief summary of the Supreme Court's decision in *Bristol-Myers*. That suit involved claims that a Bristol-Myers-made drug, Plavix, had injured individuals who took it. The suit included eight separate complaints, collectively including over 600 named plaintiffs, all of which had been aggregated into a single mass action under a California state court aggregation rule. *See Bristol-Myers*, 137 S. Ct. at 1778. Only 86 plaintiffs were California residents; the other 592 were residents of 33 other states. *Id.* The nonresident plaintiffs "did not allege that they obtained Plavix through California physicians or from any other California source; nor did they claim that they were injured by Plavix or were treated for their injuries in California." *Id.*

Applying "settled principles regarding specific jurisdiction" under the Fourteenth Amendment, *id.* at 1781, the Supreme Court held Bristol-Myers's "extensive activities in California" were not sufficient to establish personal jurisdiction over Bristol-Myers as to the claims of the non-resident plaintiffs, *id.* at 1778. In doing so the Court clarified several key questions in the law of personal jurisdiction. Notably, *Bristol-Myers* explained that for a state court to have specific personal jurisdiction over a defendant with respect to a plaintiff's claims, those claims must "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (modifications and citations omitted). Because the out-of-state plaintiffs' alleged injuries did not arise out of

8

or relate to Bristol-Myers's specific contacts with California, the California state courts lacked specific personal jurisdiction over the company with respect to those claims. *Id.* at 1781. The Court also explained that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781. In other words, even if a state court might have personal jurisdiction over similar claims, other potential plaintiffs must still demonstrate personal jurisdiction over the defendant with respect to their own claims.

But the Supreme Court's decision in *Bristol-Myers* addressed a requirement placed on state courts by the Fourteenth Amendment. Accordingly, it did not purport to address the precise issue in this case, i.e., whether a nationwide FLSA collective action brought in federal court is subject to the same jurisdictional analysis as a mass action brought in a California state court. *Id.* at 1784. Moreover, the Court left open questions about how the decision might impact the personal jurisdiction analysis for other procedural devices like class actions. *See id.* at 1789 n.4 (Sotomayor, J., dissenting).

A.

The District Court held the analysis in *Bristol-Myers* applied to Fischer's FLSA action, despite this case being in federal court rather than state court, and despite the differences between the FLSA collective action and the California mass action at issue in *Bristol-Myers.* Because the FLSA does not authorize nationwide service of process, "service in this case is only effective to the extent that Pennsylvania state courts may

9

exercise jurisdiction over a given defendant." App. 14 (citing Fed. R. Civ. P. 4(k)(1)(A)). Accordingly, "the sole question becomes whether the Court may exercise jurisdiction pursuant to the Fourteenth Amendment," App. 14, the same ultimate question that was at issue in *Bristol-Myers*.

The District Court here concluded the "collective action opt-in plaintiffs are individual parties that join together and allege the same harm against the same defendant." App. 17. "FLSA opt-in plaintiffs are no different than the plaintiffs in [*Bristol-Myers*]. Therefore, their claims are subject to the same jurisdictional limitations." App. 18. Accordingly, because the out-of-state opt-in plaintiffs "do not claim to have suffered harm within the forum state," they could not demonstrate the "requisite connection between activities within the state and the case at hand." App. 23. Therefore, the District Court found it could only certify a collective action consisting of individuals who were employed in Pennsylvania, as it lacked personal jurisdiction over the claims of any out-of-state plaintiffs.

On appeal, Appellants contend the jurisdictional problems highlighted by the Supreme Court in *Bristol-Myers* are not present in an FLSA collective action brought in federal court. In doing so, Appellants rely on several doctrines, analogies to other procedural devices, and policy principles. Ultimately, we find none of these arguments convincing for the reasons described below.

B.

Appellants first contend opt-in plaintiffs' claims in FLSA actions should be exempted from the personal

10

jurisdictional requirement in the suit. They urge us to analogize the FLSA collective action to a class action. They contend that for class actions the "personal-jurisdiction analysis occurs at the level of the suit," not at the level of each claim. Appellants' Br. 8 (quotation marks and citation omitted). Accordingly, they posit that, like class actions, we should analyze the personal jurisdiction questions with reference to the named plaintiff only. Once a court has jurisdiction over the defendant with respect to the named plaintiffs' claims, the personal jurisdictional requirements for the entire suit would be satisfied, and additional plaintiffs could freely opt in regardless of whether they could satisfy the Fourteenth Amendment's minimum contacts requirements.

We believe Appellants' analogy from class actions to FLSA collective actions fails. We have long treated properly certified class actions as a sui generis type of suit, with different requirements and accompanying allowances from the "ordinary" process of litigation. *See Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) (describing class actions as one of "[s]everal exceptions" that alter certain foundational rules of litigation). Notably, courts adjudicating properly constituted class actions can bind absent class members without their presence as parties "where they are in fact adequately represented by parties who are present." *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) ("[T]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979))); *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982). As the Supreme Court observed in *Hansberry*, class actions are a recognized exception from the "general application in Anglo-

11

American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry*, 311 U.S. at 40. Indeed, one of the principal justifications for the class action device is to allow courts the practical flexibility to better handle situations where mass joinder is "impossible . . . because some are not within the jurisdiction." *Id.* at 41.

Over the last half century, courts and Congress have constructed a careful balance designed to protect both the absent class members (by ensuring their interests are being adequately protected) and defendants (by making the res judicata implications of a class action clearer). *See* Fed. R. Civ. P. 23 advisory committee's note, *reprinted in* 39 F.R.D. 69, 98 (1966); 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1753 (4th ed. 2022) [hereinafter "Wright & Miller, Federal Practice and Procedure"]. This has resulted in the important set of requirements, enshrined in Fed. R. Civ. P. 23 ("Rule 23"), to govern judicial oversight of class actions. These requirements are not merely incidental, but rather inextricably intertwined with the class action device. *See Campbell v. City of L.A.*, 903 F.3d 1090, 1105 (9th Cir. 2018) ( "[B]ecause of the due process concerns inherent such a proceeding, the district court must initially approve the creation of a class and the appointment of an adequate representative."). It is these protections that allow an absent class-action plaintiff to "sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985). The Supreme Court has rejected attempts to circumvent these critical protections to treat cases as de facto class actions when they do not contain these

12

procedural protections. *See Taylor*, 553 U.S. at 901 (rejecting a doctrine that would have allowed courts to "create *de facto* class actions at will" (quoting *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 973 (7th Cir. 1998))).

If the requirements of Rule 23 are met and the court decides to certify the class, the class "acquires an independent legal status." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). The relevant entity for purposes of the litigation after certification is the class, not the individuals who make up the class. *See id.* Once certified, class actions "present 'a unitary, coherent claim' that moves through litigation at the named plaintiff's direction and pace." *Canaday*, 9 F.4th at 403 (quoting *Lyngaas v. Curaden AG*, 992 F.3d 412, 435 (6th Cir. 2021)). "[A]s a practical matter, a defendant litigates against only the class representative." *Lyngaas*, 992 F.3d at 435. Because of this, courts have considered absent class members in Rule 23 suits not to be "parties" for jurisdictional purposes. *See Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020) ( "[U]nnamed class members are treated as nonparties for other purposes, including jurisdictional ones."); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020) ("For cases relying on specific jurisdiction over the defendant, minimum contacts, purposeful availment, and relation to the claim were assessed only with respect to the named plaintiffs.").

The Supreme Court itself has regularly entertained nationwide classes where the plaintiff relied on specific personal jurisdiction, without taking note of any procedural defects. For instance, *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338 (2011), involved a nationwide class brought in California against Wal-Mart, which was headquartered in

13

Arkansas and incorporated in Delaware. *See* Fourth Amended Complaint at ¶¶ 14, 90, *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (N.D. Cal. 2004), ECF No. 767. *Phillips Petroleum* involved a nationwide class action brought in Kansas against a defendant headquartered in Oklahoma and incorporated in Delaware. 472 U.S. at 799. In neither case did the Supreme Court find any jurisdictional deficiencies due to the presence of claims by absent out-of-state class members.[2]

Therefore, *Bristol-Myers*'s dictate that courts analyze specific personal jurisdiction in terms of "connection[s] between the forum and the specific claims at issue" is not in tension with our existing approach to class actions. 137 S. Ct.

---

[2] The holding in *Philips Petroleum* is significant for another reason: Because Kansas state courts, unlike federal courts, are unable to exercise personal jurisdiction beyond the limits of the Fourteenth Amendment, the holding cannot be read as somehow authorizing the exercise of jurisdiction under the Fifth Amendment. The propriety of nationwide class actions brought in state court, such as the one at issue in *Philips Petroleum*, demonstrates that the proper personal jurisdiction analysis for class actions does not turn on whether the constitutional limit on jurisdiction is the Fourteenth Amendment or the Fifth Amendment. That out-of-state plaintiffs may be included in a class action in state court necessarily implies that the personal jurisdiction analysis applicable to class actions does not depend on the arguments we discuss in Section II.E, *infra*, which would only apply in federal court.

at 1781.[3] And in a class action, the relevant claim is the claim of the class. Accordingly, we analyze the jurisdictional questions with respect to the class as a whole, as exemplified by the named plaintiff. Thus, we agree with many of our colleagues across the appellate and trial benches who held have that *Bristol-Myers* did not change the personal jurisdiction question with respect to class actions. *See, e.g.*, *Lyngaas*, 992 F.3d at 433 ("We decline to extend *Bristol-Myers Squibb* in this manner. Long-standing precedent shows that courts have routinely exercised personal jurisdiction over out-of-state defendants in nationwide class actions, and the personal-jurisdiction analysis has focused on the defendant, the forum, and the named plaintiff, who is the putative class representative."); *see also Mussat*, 953 F.3d at 448; *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126–27 (D.D.C. 2018), *aff'd sub nom. Molock*, 952 F.3d 293; *Chernus v. Logitech, Inc.*, No. 17-673(FLW), 2018 WL 1981481, at *7 (D.N.J. Apr. 27, 2018) (collecting cases).

## C.

With this in mind, we return to Appellant's analogy to the class action device. Appellants contend that because

---

[3] The Justices' approach to oral argument in *Bristol-Myers* further buttresses this conclusion. Justices Breyer and Kagan both pressed the litigants on the implication their decision might have for class actions. *See* Transcript of Oral Argument at 17, 58–59, *Bristol-Myers*, 137 S. Ct. 1773 (No. 16-466). Counsel for Bristol-Myers assured them that any decision they authored in their favor would not need to disrupt class action practice. *Id.* at 18.

Fischer's claims are premised on FedEx's specific contacts with Pennsylvania, the trial court had specific personal jurisdiction over this matter, and any opt-in plaintiffs, like absent class action members, should be ignored for the purposes of the jurisdictional analysis.

Nevertheless, the statutory text of the FLSA collective action device, particularly as compared to Rule 23 and the California aggregation rule at issue in *Bristol-Myers*, the FLSA's legislative history, and the weight of the caselaw, demonstrate that FLSA suits should be treated as ordinary in personam suits for purposes of personal jurisdiction. Accordingly, opt-in plaintiffs are required to demonstrate the court has personal jurisdiction with respect to each of their claims.

1.

"Statutory interpretation, as we always say, begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). Section 216(b) of the FLSA provides:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff

16

to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

The difference between the language of § 216(b) and Rule 23 is striking. As the Second Circuit has observed, these two provisions "bear little resemblance to each other." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir. 2020).

The FLSA collective action device contains none of the crucial requirements that allow the class action to be excepted from certain rules of "general application in Anglo-American jurisprudence." *Hansberry*, 311 U.S. at 41–43. Instead, the FLSA collective action only requires that the opt-in plaintiffs be "similarly situated." 29 U.S.C. § 216(b). As the Ninth Circuit aptly explained, "[t]his gap between the requirements of collective and class proceedings is to be expected, as many of the rules specific to class actions have evolved to protect the due process rights of absent class members, a consideration not pertinent under the post-1947 FLSA." *Campbell*, 903 F.3d at 1112. The lack of such mandatory protections and process for FLSA collective actions means they should not be analogized to class actions. *See Taylor*, 553 U.S. at 900–01; *Canaday*, 9 F.4th at 403; *Campbell*, 903 F.3d at 1112 ("[A]s nonrepresentative actions, collective actions have no place for conditions such as adequacy or typicality.").

Furthermore, while courts often borrow language from the class action context when discussing the "certification" of

a collective action, that is a misnomer. The FLSA does not mandate courts take any action to certify a collective action. 29 U.S.C. § 216(b). The widely practiced common law "certification" process courts have adopted only results in notice to potential plaintiffs, rather than the creation of an independent legal entity. *See Genesis Healthcare Corp.*, 569 U.S. at 75 ("The sole consequence of conditional certification [in an FLSA collective action] is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." (citation omitted)); *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) ("[T]he 'conditional certification' is not really a certification. It is actually . . . the [facilitation of] sending of notice to potential class members." (citation omitted)); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) ("Because similarly situated employees must affirmatively opt into the litigation, the decision to certify the action, on its own, does not create a class of plaintiffs."). That "[d]istrict courts have also allowed opt-in plaintiffs to stay in the litigation, even after certification is denied," *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018), further demonstrates that FLSA collective action "certification" is fundamentally different from the certification of a Rule 23 class. While this linguistic imprecision may not seem significant, the fact that certification does not create an independent legal entity with its accompanying rights and protections is a critical distinction between the FLSA collective action and the Rule 23 class action.

Once the class is certified, Rule 23(a) explicitly contemplates the named plaintiff or defendant acting as a "representative part[y]." Fed. R. Civ. P. 23(a). No analogous

language appears in § 216(b). *See Campbell*, 903 F.3d at 1113 (stating that the lack of any mention of a "class proceeding" in § 216(b) indicates an affirmative congressional choice to distinguish an FLSA collective action from a Rule 23 class action). In contrast, an opt-in plaintiff under § 216(b) becomes a "party plaintiff." 29 U.S.C. § 216(b). By defining them as party plaintiffs, the statute indicates "opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs." *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003); *see also Mickles*, 881 F.3d at 1278 (finding that opt-in plaintiffs remain parties until they are dismissed, and may appeal adverse judgments in the same manner as a named plaintiff); McLaughlin on Class Actions § 2:16 (2021) ("Unlike absent members of a certified class action, any plaintiff who opts in to a collective action has full party status and obligations.").

Rule 23 also contains important post-certification protections that are notably absent in § 216(b). Because absent class members are not present in court, the court is authorized to issue various orders "to protect class members and fairly conduct the action." Fed. R. Civ. P. 23(d)(1)(B). The FLSA does not provide any analogous authority. Rule 23 also establishes a rigorous system surrounding the settlement of class actions in which absent class members are notified and provided an opportunity to opt-out and to object. Fed. R. Civ. P. 23(e). And before approval of the settlement, the court must conduct a hearing and find "it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Once again, FLSA collective actions contain none of these protections. *See* 29 U.S.C. § 216(b); McLaughlin on Class Actions § 2:16 ("Unlike class actions, which cannot be settled without notice to absent class members under Rule 23(e), a collective action

19

may be settled without notice to absentee members." (footnote omitted)).

These differences do not solely manifest themselves in the statutory text or during the certification process. The essentially individual character of an FLSA collective action litigation means "each FLSA claimant has the right to be present in court to advance his or her own claim." Wright & Miller, Federal Practice and Procedure § 1807. And defendants in an FLSA collective action retain the ability to assert "highly individualized" defenses with respect to each of the opt-in plaintiffs. *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1107 (10th Cir. 2001); *see also Morgan*, 551 F.3d at 1263 (finding the presence of individualized defenses does not prevent an FLSA collective action from being brought); *Shabazz v. Morgan Funding Corp.*, 269 F.R.D. 245, 251 (S.D.N.Y. 2010) (allowing defendants to "assert individualized issues that may result in factual disputes at trial" in an FLSA collective action); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 484 (E.D.N.Y. 2001) ("[S]tanding alone, the prospect of individual defenses should not defeat authorization of a collective action in this case."). Moreover, district courts presiding over FLSA collective action trials typically instruct juries to consider the claims of each plaintiff entirely separately.[4]

---

[4] *See*, *e.g.*, Verdict Form at 32–33, *Lopez v. Genter's Detailing, Inc.*, No. 03:09-CV-553-G, 2011 WL 5119964 (N.D. Tex. Oct. 14, 2011) (including separate verdicts for each plaintiff in a collective-action); Allan G. King & Andrew Gray, *The Unanimity Rule: "Black Swans" and Common Questions in FLSA Collective Actions*, 10 Fed. Cts. L. Rev. 1, 17–19 (2017)

Accordingly, from start to finish, FLSA collective actions are materially different from Rule 23 class actions with regard to the representative nature of the suits.

2.

This gulf between FLSA collective actions and Rule 23 class actions is drawn into sharper relief when comparing the FLSA collective action with the California aggregation rule at the heart of *Bristol-Myers*.

The mass action at issue in *Bristol-Myers* was coordinated under Cal. Civ. Proc. § 404 (West 2022) (the "California Coordination Statute"). The California Coordination Statute allows coordination of "civil actions sharing a common question of fact or law" that are pending in different courts. Cal. Civ. Proc. § 404. Coordination is appropriate

> if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower;

("In multi-plaintiff actions under the FLSA, the norm in submitting jury interrogatories is to submit a single verdict form for each plaintiff.").

21

the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied.

*Id.* § 404.1.

And unless otherwise specified, "all provisions of law applicable to civil actions generally apply to an action included in a coordination proceeding." Cal. St. Rules of Court 3.504(a).

Unlike Rule 23, the California Coordination Statute does not contemplate any parties acting in a representative manner. And like FLSA collective actions, the California Coordination Statute lacks the stringent procedural protections of Rule 23. The California Coordination Statute, like an FLSA collective action, still allows for each plaintiff to proceed with different claims.[5] Coordination may be proper even if certain issues might be "heavily individualized." *Ford Motor Co. v. Superior Ct.*, 218 Cal. Rptr. 3d 185, 197 (Ct. App. 2017). Like the FLSA's use of the term "party plaintiffs," the California

---

[5] *See, e.g.*, *McGhan Med. Corp. v. Superior Ct.*, 14 Cal. Reptr. 2d 264, 271 (Ct. App. 1992) (noting that even though the products at issue in a coordinated suit are "[s]everal and differ in terms of manufacture, design and content" and the exact claims differed, coordination was appropriate because "depositions, interrogatories, admissions, collection of physical data, etc., will be better achieved if done in a coordinated manner").

22

Coordination Statute defines the parties to the coordinated action as each of the parties to the constituent actions. *See* Cal. St. Rules of Court 3.501(13).

Based on this, the California Coordination Statute is better understood as a species of joinder rather than a class action device. *See, e.g.*, *Jasmine Networks, Inc. v. Superior Ct.*, 103 Cal. Rptr. 3d 426, 436–37 (Ct. App. 2009) (comparing Cal. Civ. Proc. § 404 to joinder and intervention). Courts, including this one, have similarly described the FLSA collective action device as a species of joinder. *See, e.g.*, *Genesis Healthcare Corp.*, 569 U.S. at 70 n.1 (describing Section 216 as a "joinder process"); *Mineo v. Port Auth. of N.Y. & N.J.*, 779 F.2d 939, 941 n.5 (3d Cir. 1985) (describing § 216 as a form of "permissive joinder"); *Campbell*, 903 F.3d at 1104–05 ("The natural parallel [for FLSA named and opt-in plaintiffs] is to plaintiffs initially named or later added under the ordinary rules of party joinder."). This comparative dissimilarity between the FLSA collective action and the California Coordination Statute on one hand, and Rule 23 class actions on the other, indicates Appellant's analogy to class actions is inapt.

3.

The history of the FLSA collective action device further supports our conclusion that it should not be treated as a class action. Courts around the time of the FLSA's establishment read the statute to merely create a system of "permissive joinder" rather than creating "so-called class actions." *Fink v. Oliver Iron Mining Co.*, 65 F. Supp. 316, 318 (D. Minn. 1941) (collecting cases); *see also Pentland v. Dravo Corp.*, 152 F.2d 851, 854–55 (3d Cir. 1945) (characterizing the FLSA collective action as a form of permissive joinder or a spurious

23

class action rather than a "true class suit"), *superseded by statute on other grounds as recognized in Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012). And when Rule 23 was brought into the modern era in 1966, the Advisory Committee took pains to explain their changes did not affect § 216. *See* Fed. R. Civ. P. 23 advisory committee's note, *reprinted in* 39 F.R.D. 69, 104 (1966) ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended."). The Advisory Committee also distinguished the modern Rule 23 class actions from the historic spurious class actions on which the FLSA collective action device was based which were not supposed to "adjudicate the rights or liabilities of any person not a party" and only provided an invitation to intervene.[6] *Id.* at 99.

Over fifty years have passed since then, and Congress has had opportunities to revise the FLSA collective action device to bring it in line with the modern Rule 23. Congress has revised § 216 multiple times, including as recently as 2018. *See, e.g.*, Consolidated Appropriations Act, Pub. L. No. 115-141, Div. S, Title XII, § 1201(b), 132 Stat. 1148 (2018). The fact Congress has chosen not to bring § 216 in line with Rule

---

[6] Appellants suggest the historical inclusion of spurious class actions in Rule 23 is a reason we should view opt-in collective actions as a species of representative suit. We disagree. The explicit exclusion of spurious class actions from modern Rule 23 illustrates a line the drafters intended to draw between devices which would remain under the umbrella of Rule 23 and those which would not. *See Taylor*, 553 U.S. at 901 (disapproving of "*de facto* class actions" that lack the procedural protections of, for example, Rule 23 (quoting *Tice*, 162 F.3d at 973)).

23, indicates the statute should not be read to conform to Rule 23. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally . . . .").

4.

Given all this, it is unsurprising that the weight of prior decisions supports finding that FLSA collective actions cannot be analogized to Rule 23 class actions as Appellants urge. When the Supreme Court has had occasion to compare the two devices, it has stated "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp.*, 569 U.S. at 74. This principle has been echoed by many of our sister courts. *See Canaday*, 9 F.4th at 402 (stating that the significant differences between Rule 23 and the FLSA "require different approaches to personal jurisdiction"); *Scott*, 954 F.3d at 519 (noting differences between "the language and structure of § 216(b) and the modern Rule 23, which bear little resemblance to each other"); *Campbell*, 903 F.3d at 1105 (stating a collective action "is not a comparable form of representative action" and "is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of individual plaintiffs with individual cases—capitalizing on efficiencies of scale, but without necessarily permitting a specific, named representative to control the litigation"); *Grayson v. K. Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996) ("There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA [§ 216(b)].") (quoting *LaChapelle v. Owens-Ill., Inc.*, 513 F.2d 286, 289 (5th Cir. 1975)); *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981) (finding a § 216(b) collective action

"cannot be deemed a representative action on behalf of the individual employees of the type governed by a Rule 23 action").

All told, the text, history, and weight of the case law uniformly supports the view that FLSA collective actions are fundamentally different from Rule 23 class actions. At bottom, an FLSA collective action proceeds "as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases." *Campbell*, 903 F.3d at 1105. In contrast, a Rule 23 class action, once certified, is directed by the named plaintiff and class counsel, representing the absent class members, under the supervision of the court. *See Canaday*, 9 F.4th at 403; *Lyngaas*, 992 F.3d at 435. The Supreme Court has cautioned that courts "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 393 (2008). We would be doing that if we were to expand the allowances given to class actions due to their carefully balanced structure, to the FLSA collective action device. Accordingly, we believe an FLSA collective action should operate like an individual in personam suit for purposes of personal jurisdiction, meaning the district court must have personal jurisdiction over the defendant with respect to each opt-in plaintiff's individual claim.

D.

Having determined courts need personal jurisdiction over a defendant with respect to all plaintiffs' claims in FLSA actions, we need to decide what is required of a federal district court to do so. Under Fed. R. Civ. P. 4(k)(1)(A), we first ask whether Pennsylvania's service of process rules permit the

26

exercise of personal jurisdiction with respect to opt-in plaintiffs' claims. Here, because the out-of-state plaintiffs' claims do not arise out of or relate to FedEx's minimum contacts with Pennsylvania, the District Court did not have personal jurisdiction under Rule 4(k)(1)(A) broad enough to reach those claims.

We then consider alternative theories whereby opt-in plaintiffs might use § 216 to establish personal jurisdiction directly with respect to opt-in plaintiffs' claims, without relying on the initial service of a summons under Rule 4(k)(1)(A). Because opting in to an FLSA collective action is akin to a species of joinder, Appellants suggest a variety of possible reasons a court might be free to exercise broader personal jurisdiction than what is authorized under Rule 4(k)(1)(A). While we agree that a federal law could authorize broader personal jurisdiction when parties join a suit as compared to the initial filing of a suit, we disagree that § 216 is an example of a federal law that does so. And we are not aware of any other general Civil Rule which changes this analysis by authorizing the exercise of personal jurisdiction over FedEx with respect to the opt-in plaintiffs' claims here.

1.

At the highest level, the potential outer limits of the personal jurisdictional authority of a federal court are defined by the Due Process Clause of the Fifth Amendment. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368–69 (3d Cir. 2002). By contrast, the potential outer limits of the personal jurisdictional authority of a state court are defined by the Due Process Clause in the Fourteenth Amendment. *Bristol-Myers*, 137 S. Ct. at 1779 (collecting cases).

27

Appellants contend that in the absence of a source of law which limits personal jurisdiction, federal courts are free to exercise jurisdiction to the maximum extent permissible under the Fifth Amendment.[7] But the personal jurisdictional limits in the Fifth and Fourteenth Amendments are not self-executing. *See S.E.C. v. Ross*, 504 F.3d 1130, 1140 (9th Cir. 2007) ("The power to exercise jurisdiction nationwide is not self-executing. Mere contacts with the jurisdiction, even when coupled with some kind of actual notice, are not sufficient to invest the district court with *in personam* jurisdiction over a party-in-interest."). For a court to exercise personal jurisdiction over a defendant, the defendant must be served process, alerting the defendant to the pendency of the suit and the nature of the claims against her. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.") (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946)); *Volkswagenwerk Aktiengessellschaft v. Schlunk*, 486 U.S. 694, 700 (1988) ("Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action."); Wright & Miller, Federal Practice & Procedure, § 1063 (describing the primary function of service of process as "provid[ing] the mechanism for bringing notice of the commencement of an action to the defendant's attention and to provide a ritual that

---

[7] The basis for subject matter jurisdiction in this suit is federal question jurisdiction, because the suit was brought under the FLSA.

28

marks the court's assertion of jurisdiction over the lawsuit").

In *Omni Capital*, the Supreme Court held, in the context of establishing personal jurisdiction over a defendant at the inception of a suit where the defendant had not been served or consented to jurisdiction, federal courts could not look directly to the Fifth Amendment to assess if jurisdiction would be proper. *See Omni Capital*, 484 U.S. at 104 ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Accordingly, "before a court may exercise personal jurisdiction over a defendant," in the absence of consent, "there must be authorization for service of summons on the defendant," even in situations where the Fifth Amendment itself does not prohibit the exercise of personal jurisdiction. *Omni Capital*, 484 U.S. at 104. Specifically, the Court identified Rule 4 of the Federal Rules of Civil Procedure as the primary Congressionally authorized mechanism by which a federal court could serve process and thus exercise personal jurisdiction over a defendant. *Id.* at 104–05. It would appear, therefore, the Supreme Court declined to fashion a personal jurisdiction rule unique to federal courts in the absence of authorization from Congress, even if the rule would satisfy the Fifth Amendment. *Id.* at 104. And the Court declined to exercise common law authority to craft a jurisdictional rule where Congress had not authorized common law rulemaking, because "the weight of authority, both in the cases and in the commentary, considers statutory authorization necessary to a federal court's service of summons." *Id.* at 109 (citations omitted) (internal quotation marks omitted); *accord Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 297 (3d Cir. 1985) (noting that "in the absence of a governing federal statute we have found no authority for exercising personal

jurisdiction" over a defendant based on contacts with a state other than that in which the federal court sits); *cf. Omni Capital*, 484 U.S. at 108 ("[I]t is unclear at this time whether it is open to us to fashion a rule authorizing service of process.").

Accordingly, to determine if personal jurisdiction is proper in a traditional in personam suit we begin with the source of law authorizing the service of process whereby plaintiffs seek to establish personal jurisdiction, which in federal courts is Rule 4.[8] If the source of law authorizing service of process permits the exercise of personal jurisdiction with regard to the claims at issue, personal jurisdiction will be proper so long as it does not violate the outer limits permissible under the Constitution. But, if no source of law authorizing

---

[8] Rule 82, which explicitly provides that the Civil Rules cannot be used "to extend or limit the jurisdiction of the district courts," Fed. R. Civ. P. 82, does not change our analysis. We think the mention of "jurisdiction" in Rule 82 only refers to subject matter jurisdiction, not personal jurisdiction. *See* Fed. R. Civ. P. 82 advisory committee notes to 2001 amendment (noting that a prior version of the rule, which stated the Civil Rules do not "extend or limit the jurisdiction of the United States district courts," would have been "a flat lie if 'jurisdiction' includes personal or quasi-in rem jurisdiction"); *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 445 (1946) ("Rule 4(f) [now Rule 4(e)] serves only to implement the jurisdiction *over the subject matter* which Congress has conferred, by providing a procedure by which the defendant may be brought into court at the place where Congress has declared that the suit may be maintained.") (emphasis added).

service of process permits the exercise of personal jurisdiction with regard to the claims at issue, we are unable to exercise personal jurisdiction over those claims, regardless of what the outer limits of the Constitution might theoretically permit.

## 2.

Rule 4(k)(1)(A) is the traditional source of personal jurisdiction in federal courts. Under Rule 4(k)(1)(A), Fischer's service of a summons on FedEx established personal jurisdiction over FedEx to the extent it is "subject to the jurisdiction" of Pennsylvania's courts. Fed. R. Civ. P. 4(k)(1)(A). Fischer established specific personal jurisdiction over FedEx based on certain minimum contacts between FedEx and Pennsylvania. Because the opt-in plaintiffs' claims do not arise out of or relate to those minimum contacts, the initial service of a summons cannot be used to exercise jurisdiction over FedEx under Rule 4(k)(1)(A) with regard to those claims.

Rule 4(k)(1) sets out situations in which "[s]erving a summons . . . establishes personal jurisdiction over a defendant." Rule 4(k)(1)(A) provides that one such situation is when the summons is served on a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." State, but not federal, courts are courts of general jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

For a defendant to be "subject to the jurisdiction" of a state court, the exercise of personal jurisdiction must be authorized by state law, such as by the state's long-arm statute, and must comport with the requirements of the Fourteenth

31

Amendment.  *See* Wright & Miller, Federal Practice & Procedure § 1069.  Pennsylvania's long-arm statute allows the Commonwealth to exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa. Cons. Stat. Ann. § 5322(b); *see Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 1998).  Where a federal court relies on such a state rule authorizing jurisdiction to the fullest extent permitted by the Constitution, Rule 4(k)(1)(A) incorporates the constitutional limits on jurisdiction imposed by the Fourteenth Amendment.  *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (analyzing personal jurisdiction under the Fourteenth Amendment because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons") (citing Fed. R. Civ. P. 4(k)(1)(A).  The reason federal courts are limited by the Fourteenth Amendment in such cases is not because a federal court exercising broader personal jurisdiction would violate the Constitution, but because Rule 4(k)(1)(A) does not authorize jurisdiction broader than what would be permissible for a state.

The Fourteenth Amendment permits two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction.  *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).  As the names suggest, general personal jurisdiction is broader than specific personal jurisdiction, reaching all potential claims against the defendant regardless of their connection to the state.  By contrast, specific personal jurisdiction only reaches claims that arise out of or relate to the minimum contacts a plaintiff can demonstrate between the defendant and the forum state.  *See Bristol-Myers*, 137 S. Ct. at 1781 ("What is needed . . . is a connection

between the forum and the specific claims at issue.").

Here, the Appellants cannot establish general personal jurisdiction over FedEx under Rule 4(k)(1)(A). For a corporation, general jurisdiction is only proper in states where the corporation is fairly regarded as "at home," which generally is restricted to the corporation's state of incorporation or the state of its principal place of business. *Daimler*, 571 U.S. at 122; *Goodyear Dunlop Tires Ops., S.A.*, 564 U.S. at 924. Accordingly, FedEx, which is incorporated in Delaware and has a principal place of business in Tennessee, is not "at home" in Pennsylvania.

And Appellants fare no better with specific personal jurisdiction. Fischer was able to establish personal jurisdiction over FedEx with respect to her claims in Pennsylvania because FedEx operates locations in Pennsylvania (i.e., there were sufficient minimum contacts with the state), and her claims arose out of her work for FedEx in the Pennsylvania locations (i.e., the claims arose out of or related to the minimum contacts). By contrast, the opt-in plaintiffs lived in New York and Maryland. They were employed by FedEx in New York and Maryland. And they do not contend they had any connection to, let alone injury arising from, FedEx's activities in Pennsylvania. Their claims entirely relate to their treatment by FedEx in their respective home states.

Appellants claim this application of Rule 4(k)(1)(A) would require "all opt-in plaintiffs who join the suit via written consent [to] comply with the service-of-process requirements set forth in Rule 4." Appellants' Br. 37. But our holding in this appeal does not require independent service any time a plaintiff would seek to join a suit, or, relatedly, any time a

plaintiff seeks to amend or add claims herself. A defendant who is "subject to the jurisdiction" of a state's courts, pursuant to Rule 4(k)(1)(A), would be so not only for the verbatim claims alleged in the initially filed complaint but also for other potential claims that might be asserted. In the case of general personal jurisdiction, once the court asserts personal jurisdiction over a defendant through service of process under Rule 4(k)(1)(A), the defendant is subject to the jurisdiction of the court with regard to any and all claims that might be brought. *See Goodyear Dunlop Tires Ops., S.A.*, 564 U.S. at 919 ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." (quoting *International Shoe v. Washington*, 326 U.S. 310, 317 (1945))). Accordingly, if an additional plaintiff seeks to join the suit, or if the original plaintiff seeks to add or amend claims, there is no need to serve the defendant again because the defendant is already subject to the court's jurisdiction. The same principle is true for specific personal jurisdiction, though the family of claims that might be asserted is narrower: A defendant is subject to the jurisdiction of the state's courts only with regard to those claims that arise out of or relate to the defendant's minimum contacts with the state. *See Goodyear Dunlop Tires Ops., S.A.*, 564 U.S. at 919 ("In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (internal quotation marks and citation omitted). For this reason, if an additional plaintiff seeks to join the suit bringing her own claims, or if the original plaintiff seeks to add or amend claims, there is no need to serve the defendant again as long as the new claims arise out of or relate to the

34

defendant's minimum contacts with the forum state, because the defendant would already be subject to the jurisdiction of the court with respect to those claims.

Appellants make two arguments in attempting to tie the claims of the opt-in plaintiffs to FedEx's contacts with Pennsylvania. Both are precluded by *Bristol-Meyers*. *First*, Appellants contend that all plaintiffs "suffered the same harm stemming from the same unlawful policy." Appellants' Br. at 56. The Supreme Court in *Bristol-Myers* considered an analogous argument and concluded that the mere fact that other plaintiffs allegedly suffered the same injury from the same source "does not allow the [forum] to assert specific jurisdiction over the nonresidents' claims." 137 S. Ct. at 1781. What is required is a showing that the out-of-state plaintiffs' injuries have a connection to the forum state, not just that the injuries are similar to those of in-state plaintiffs. *Second*, Appellants assert that by creating the FLSA collective action device, Congress has defined a legal relationship between out-of-state opt-in plaintiffs and in-state plaintiffs, such that the out-of-state plaintiffs' claims, once joined in the suit, are related to the employer's activities in the forum state. But merely being named a party in a suit cannot alone constitute a legal relationship sufficient to establish personal jurisdiction. Indeed, *Bristol-Myers* forecloses this argument: The legal relationship between the plaintiffs defined by the California mass action device at issue in the case made no difference for the Court's personal jurisdiction analysis.

For these reasons, we believe that in an FLSA collective action where personal jurisdiction is asserted under Rule 4(k)(1)(A), each opt-in plaintiff must demonstrate that the court has personal jurisdiction over the defendant with regard

35

to her claims. The opt-in plaintiffs have failed to do so here. The District Court correctly found that service of process did not establish personal jurisdiction over the defendant under Rule 4(k)(1)(A) with respect to the claims of the opt-in plaintiffs. As the Sixth Circuit observed in *Canaday* regarding another FLSA collective action "[t]aken together, the claims [of out-of-state plaintiffs] look just like the claims in *Bristol-Myers*." 9 F.4th at 397.

3.

Separate from personal jurisdiction tied to the initial service of process under Rule 4(k)(1)(A), opt-in plaintiffs might also be able to independently establish jurisdiction over the defendant with regard to their claims if a federal law directly authorized it. *See* Fed. R. Civ. P. 4(k)(1)(C) (providing that serving a summons establishes personal jurisdiction "when authorized by a federal statute"). But to use Rule 4(k)(1)(C), opt-in plaintiffs would need to identify a federal statute that authorizes the exercise of personal jurisdiction. And the federal statutory provision at issue here, § 216(b) of the FLSA, does not do so.

Congress can provide federal courts a statutory mechanism through which to establish personal jurisdiction, so long as that exercise does not exceed the bounds of the Fifth Amendment. Personal jurisdiction established pursuant to Rule 4(k)(1)(C) traditionally involves a federal statute authorizing nationwide service of process and is constitutionally limited only by the Fifth Amendment (i.e., a nationwide minimum contacts analysis), not the Fourteenth Amendment. *See Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 122 (3d Cir. 2020) ("Where Congress has statutorily

36

authorized nationwide service of process, such service establishes personal jurisdiction, provided that the federal court's exercise of jurisdiction comports with Fifth Amendment due process.") (quoting *Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006)). Congress can also provide different jurisdictional rules for different parties in the same suit. For example, under the Racketeer Influenced and Corrupt Organizations statute, so long as jurisdiction is proper over at least one defendant according to the traditional, state-bound minimum contacts test, other parties may be served nationwide. *See Laurel Gardens*, 948 F.3d at 120 (explaining the implications for personal jurisdiction of 18 U.S.C. § 1965(a) and (b)).

But the drafters of the FLSA did not provide any such mechanism to establish personal jurisdiction in § 216(b). There is no mention in § 216(b) of service of process. And the only explicit mention of jurisdiction in this provision is the requirement that the court in which an action is brought be "of competent jurisdiction."

The "similarly situated" language in § 216 cannot be read as a grant of personal jurisdiction with regard to opt-in plaintiffs' claims. This requirement directly follows the instruction that the court must be "of competent jurisdiction," indicating "similarly situated" was not meant to provide an independent basis for jurisdiction. Moreover, the "similarly situated" requirement governs all FLSA collective actions without distinguishing between those in state versus federal court.

For these reasons, we see no plausible way to read § 216(b) as independently granting jurisdiction for federal

courts to exercise personal jurisdiction over a defendant with regard to opt-in plaintiffs' claims. Accordingly, Rule 4(k)(1)(C) cannot be used directly by opt-in plaintiffs to independently establish personal jurisdiction because doing so has not been authorized by federal law.

4.

Since Rule 4(k) does not authorize the exercise of personal jurisdiction over the out-of-state plaintiffs' claims at issue here, Appellants suggest that "[t]he text of Rules 4 and 5 impose no . . . obligation" for opt-in plaintiffs to serve a summons according to Rule 4. Appellants' Br. 41. Appellants contend that opt-in plaintiffs in FLSA actions have not traditionally been required to serve a summons under Rule 4, instead serving "written notice" under Rule 5.[9] Fed. R. Civ. P. 5(a)(1)(E). Even if opt-in plaintiffs were required to serve a new complaint stating their claims, that complaint might be considered "a pleading filed after the original complaint," which could also be served under Rule 5. Fed. R. Civ. P. 5(a)(1)(B).

---

[9] Rule 5 permits certain papers to be served on an opposing party with less formality than what is required under Rule 4. Rule 5 covers a wide range of papers that might be served on a defendant once the defendant has been given notice of the pendency of a suit through service under Rule 4. Rule 5 provides, for example, "[i]f a party is represented by an attorney, service under this rule must be made on the attorney," which would, for example, streamline the service of routine papers in protracted litigation. Fed. R. Civ. P. 5(b)(1).

True, unlike Rule 4(k)(1)(A), Rule 5 does not tie personal jurisdiction to a state's service of process and personal jurisdiction rules. And Rule 5 does not specifically exclude FLSA opt-in consent forms from the provisions of the rule. But we think there is an explanation: Rule 5, unlike Rule 4(k), does not authorize the exercise of personal jurisdiction. The fact that Rule 5 is silent on establishing personal jurisdiction— either to authorize or limit the exercise of jurisdiction—merely indicates that Rule 5 does not provide an independent mechanism to establish jurisdiction where Rule 4(k) would not be satisfied. Instead, Rule 5 is better seen as an alternative to Rule 4 to providing notice to an opposing party in circumstances where the court already has personal jurisdiction over the defendant with regard to the plaintiff's claims.

Indeed, we think *Omni Capital* forecloses reading Rule 5 as implicitly authorizing the service of a written notice as a substitute mechanism to establish personal jurisdiction. While *Omni Capital* only directly discussed personal jurisdiction tied to service of a summons, we think the analysis would also apply to an effort to establish personal jurisdiction without service of a summons. *Omni Capital* was written against the backdrop of a long-standing consensus that service of process was more than a mere procedural formality and was instead an essential procedural requirement in all cases for establishing personal jurisdiction. *Omni Capital*, 484 U.S. at 104. In this context, a lack of authorization to serve a summons would have been understood as synonymous with a lack of authorization to exercise personal jurisdiction.

Consistent with our reading of Rules 4 and 5, some commentators have recognized that it would be unfair to permit Rule 5 to serve as an independent authorization of personal jurisdiction where the personal jurisdiction established under

39

Rule 4(k) is not broad enough to reach the newly added claims. *See* Wright & Miller, Federal Practice & Procedure, § 1146 ("Whenever an additional claim asserted in an amended or supplemental pleading is unrelated to the claim originally asserted against him, fairness may require the court to order that jurisdiction be reasserted over the party himself rather than rely on the service of the amended pleading on his attorney under Rule 5(b)."). For purposes of our decision in this case, we need not resolve how Rule 5 would operate in every case. We need only conclude that Rule 5 cannot independently be used to allow additional plaintiffs to join a suit where their claims do not arise out of the minimum contacts that served the basis for the original exercise of jurisdiction under Rule 4(k)(1)(A).

Ultimately, we interpret the practice of allowing service of notice under Rule 5 for opt-in plaintiffs in FLSA actions not as an endorsement that Rule 5 authorizes the exercise of personal jurisdiction, but rather as evidence that, before *Bristol-Myers*, courts had not squarely addressed whether personal jurisdiction would be required with regard to opt-in plaintiffs' claims. While this evidence of historical practice has some persuasive value, it is not dispositive of the issues in this case, since it is not based on any rule or statute that authorizes the exercise of jurisdiction.[10]

---

[10] Appellants cite Rule 23 class actions as an example where absent class members may be represented in a suit without individually serving process under Rule 4. As explained above, *supra* Section II.B, the personal jurisdiction analysis for Rule 23 class actions diverges from the analysis for FLSA collective actions, because, in a class action, personal jurisdiction is not required over the defendant with respect to

\*\*\*

For these reasons, like the out-of-state plaintiffs in

---

absent class members' claims. Personal jurisdiction is not different for class actions because of any requirements in Rule 5, but rather because of the careful and detailed protections set out in Rule 23.

Appellants point to other joinder rules that they suggest do not require service of a summons under Rule 4 to establish personal jurisdiction with respect to joined parties or claims. Appellants' Br. 42 (Rule 24); *see also Waters*, 23 F.4th at 96 (Rule 20). We disagree that joinder rules are categorically exempt from the general requirement for establishing personal jurisdiction under Rule 4(k) with respect to all plaintiffs' claims. Indeed, two joinder rules—Rule 14 (third-party practice) and Rule 19 (required joinder of parties)—have an explicit service of process rule governing personal jurisdiction for joined parties. *See* Fed. R. Civ. P. 4(k)(1)(B). We decline to read other joinder rules as implicitly authorizing the exercise of personal jurisdiction when those rules are silent as to service of process. Instead, we think joinder rules are still governed by the background service of process rules in Rule 4(k)(1)(A) and (1)(B). Specifically, as explained in this opinion, § 216(b) cannot be read to authorize personal jurisdiction beyond the background rules that would otherwise govern in federal court. Labeling § 216(b) a joinder rule does not change this analysis.

41

*Bristol-Myers*, the opt-in plaintiffs in FLSA collective actions must satisfy the personal jurisdiction requirements of the Fourteenth Amendment to join the suit. FLSA collective actions are in personam suits and, unlike Rule 23 class actions, are not exempted from traditional personal jurisdiction requirements.

These traditional personal jurisdiction requirements begin with a source of law authorizing the exercise of personal jurisdiction. Where no federal law authorizes the exercise of personal jurisdiction, plaintiffs must satisfy the requirements of Rule 4(k)(1)(A), which can be used to establish personal jurisdiction over a defendant who is subject to the jurisdiction of a state's courts. Because state courts are limited by the Fourteenth Amendment, so too are federal courts relying on Rule 4(k)(1)(A).

The out-of-state opt-in plaintiffs here have not demonstrated their claims arise out of or relate to FedEx's minimum contacts with Pennsylvania as is required by the Fourteenth Amendment. Accordingly, plaintiffs have not established personal jurisdiction over FedEx with respect to their claims and cannot join the suit.

## III.

Appellants caution that affirming the trial court's decision would, at best, cause the proliferation of duplicative FLSA actions against the same employer or, at worst, prevent certain meritorious suits from being brought in the first place.

But, as an initial matter, potential plaintiffs retain the ability to bring nationwide collective actions in a court that can

42

exercise general personal jurisdiction over their employer. *See Canaday*, 9 F.4th at 400–01. Appellants express concerns about their practical ability to do so. But these same concerns were also raised by Justice Sotomayor in her dissent in *Bristol-Myers*. 137 S. Ct. at 1789 (Sotomayor, J., dissenting). The same argument should not prevail here when it did not do so before the Supreme Court.

Moreover, the Multidistrict Litigation statute also may present a potential avenue for the practical coordination of certain nationwide FLSA suits. The Judicial Panel on Multidistrict Litigation has centralized similar FLSA cases when there is duplicative litigation involving common questions of fact across the country. *See, e.g.*, *In re Lowe's Cos., Inc. Fair Labor Standards Act & Wage & Hour Litig.*, 481 F. Supp. 3d 1332 (U.S.J.P.M.L. 2020); *In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act & Wage & Hour Litig.*, 999 F. Supp. 2d 1375 (U.S.J.P.M.L. 2014). Indeed, there is evidence to suggest the drafters of the MDL statute envisioned it as a vehicle for these sorts of claims. *See* Andrew D. Bradt, *"A Radical Proposal": The Multidistrict Litigation Act of 1968*, 165 U. Pa. L. Rev. 831, 867–69 (2017) (explaining the origins of the MDL statute). We agree with the Sixth Circuit that "[m]ultidistrict litigation implicates a different statute, a different history, and a different body of caselaw [than the FLSA]." *Canaday*, 9 F. 4th at 403–04 (internal citations omitted).

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

43